1          The following is the PDF of an official transcript.

2    Official transcripts may be filed in CM/ECF only by the

3    Official Court Reporter and will be restricted in CM/ECF for a

4    period of 90 days.

5          You may cite to a portion of the attached transcript

6    by the docket entry number, referencing page and line number,

7    only after the Court Reporter has filed the official

8    transcript; however, you are prohibited from attaching a full

9    or partial transcript to any document filed with the Court.

10

11                          - - -

12          Stenographic Court Reporter Note:

13    No AI technology was used in the preparation of this

14    Official Certified U.S. District Court transcript.

15                          - - -

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

```
 1                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF GEORGIA
 2                        ATLANTA DIVISION

 3   SARAH KAVIANPOUR, M.D.,        )
                                    )
 4              Plaintiff,          )
             v.                     )   CIVIL ACTION
 5                                  )   FILE NO. 1:22-CV-03382-MLB
                                    )
 6   BOARD OF REGENTS OF THE        )
     UNIVERSITY SYSTEM OF GEORGIA,  )
 7   ET AL,                         )
                                    )
 8              Defendants.         )
     _____)
 9

10

11   -------------------------------------------------------------

12            BEFORE THE HONORABLE MICHAEL L. BROWN
                   TRANSCRIPT OF PROCEEDINGS
13                     APRIL 28, 2025

14   -------------------------------------------------------------

15

16

17          Proceedings recorded by mechanical stenography
              and computer-aided transcript produced by
18

19           JANA B. COLTER, FAPR, RDR, CRR, CRC
                   Official Court Reporter
20                 1949 U.S. Courthouse
                  75 Ted Turner Drive, SW
21                Atlanta, Georgia  30303
                     (404) 215-1456
22

23

24

25
```

```
 1   APPEARANCES:

 2   For the Plaintiff:        JOHN BATSON
                               Attorney at Law
 3
     For the Defendants:       RYAN KOLB
 4                             BRYAN WEBB
                               ROBERT THRELKELD
 5                             ELLIOTT COWARD
                               Attorneys at Law
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

```
 1      (Atlanta, Fulton County, Georgia, April 28, 2025, in open

 2  court.)

 3                         —  —  —

 4                    P R O C E E D I N G S

 5                         —  —  —

 6          THE COURT:  All right.  We're here in Kavianpour v.

 7  Board of Regents of the University of Georgia.

 8          May I have appearances starting with counsel for the

 9  plaintiff?

10          MR. BATSON:  John Batson.

11          THE COURT:  And for the defendants?

12          MR. KOLB:  Ryan Kolb and Bryan Webb for the Board of

13  Regents.

14          THE COURT:  And which one are you?

15          MR. KOLB:  Ryan Kolb.

16          THE COURT:  Okay.

17          MR. THREKELD:  Good morning, Your Honor.

18          I'm Robert Threlkeld on behalf of AU Medical Center,

19  which is now known as WellStar MCG Health, Inc.  I'm joined

20  here by my colleague, Elliott Coward.  And we're also joined

21  in the courtroom by the associate general counsel for WellStar

22  and AU Medical Center, Jason Stevens.

23          THE COURT:  Okay.  Thank you.

24          All right.  My goal for this hearing is to put this

25  case on a track where it can be resolved as efficiently as
```

1  possible.  I think this is a pretty simple case.  The

2  plaintiff tested positive, then tested negative, then was put

3  on a drug-testing procedure, which she complied with or didn't

4  comply with, or argued about.  I'm not trying to be very

5  precise in the facts.  I've spent a lot of time on the facts,

6  particularly in the first case.

7        She had some other problems, including a DUI.  She

8  was suspended from the clinic, she was terminated from the

9  program, then she was reinstated and then terminated again.

10        None of those facts are all that different.  None of

11  those facts are all that complicated.  Letters were written

12  telling her what she was supposed to do.  She either did or

13  didn't do it.  We've already resolved all of that stuff in the

14  first case.

15        Then she was given a letter telling her about the

16  reinstatement.  There was some conversation about what that

17  would include, what the clinical committee or the ad hoc

18  committee would or wouldn't look into and then the decision

19  was reaffirmed.

20        So my question is why is this a case that requires

21  hundreds of paragraphs of pleading and such complicated

22  allegations that are hard for anybody to understand?

23        It can't be that the law and the facts at issue are

24  so complicated that it takes two cases, multiple arguments,

25  multiple R&Rs by magistrate judges, replead, oh, they're

1   making me replead, they're not letting me replead everything I

2   should plead, I'll replead again.

3       I come back within the number of pages but I've got

4   all of these adoptions of prior arguments, if you want to know

5   what's in Count Two, look at Count One for what the facts are

6   and what this person did or that person did.

7       To me, it is hard to follow a lot of this.  And what

8   I don't want to do, what I don't want to do is end up at the

9   end of this case with a sentence or sentences that read

10  something like this:

11      Their final briefing and factual statements exceed

12  1500 pages, to say nothing of their exhibits, which run

13  thousands of pages more.  This includes roughly 1,000 pages

14  from the parties' summary judgment motions, 300 pages for

15  defendant's related request to exclude the plaintiff's experts

16  and 300 pages of objections and responses to a magistrate

17  judge's 181-page report and recommendation.

18      Does anybody think that this case is so broad and so

19  factually complicated or that the law is so factually

20  complicated that it requires that amount of stuff?

21      Do you think so, Mr. Batson?

22      MR. BATSON:  Well, if the premise is based on the

23  facts as you laid out on in your initial discussion here, then

24  we -- you and I are like a Grand Canyon apart about what the

25  truth is, about what the --

```
 1              (Multiple Voices Overlapping)

 2              THE COURT:  You didn't --

 3              MR. BATSON:  I'm sorry, may I -- may I --

 4              THE COURT:  You had 200 --

 5              MR. BATSON:  May I -- I'm sorry.

 6              THE COURT:  No, no.

 7              MR. BATSON:  May I be heard?

 8              THE COURT:  No, let me --

 9              MR. BATSON:  Okay.  Thank you.

10              THE COURT:  240 pages of objections to the R&R last

11   time.  Do you think it takes that much?

12              MR. BATSON:  May I be heard?

13              THE COURT:  Yes.

14              MR. BATSON:  All right.  This is a unique case.  This

15   is not your general employment case.  Believe it or not, we're

16   here because this is a case about our nation's system of

17   training medical specialists through a federal residency

18   grant.

19              THE COURT:  I can assure you this case is not about

20   that.

21              Do you think that that's what this case is about for

22   the defense?

23              MR. THREKELD:  No, Your Honor.

24              THE COURT:  A federal grant -- how is this case about

25   how our nation's residents are trained?
```

1          MR. BATSON:  They are supposed to be considered under

2     the federal grant a sponsoring institution.  To be a

3     sponsoring institution, you have to provide a hospital with

4     patients, where doctors who have spent their four years, their

5     own blood, sweat and tears to become doctors, American -- from

6     a graduate -- from accredited American medical schools and

7     then they enter the match and then they get assigned to these

8     schools that are sponsoring institutions.

9          In order to get your federal grant, you have to sign

10    the -- that -- that, indeed, that you agree to the conditions

11    of the American College of Graduate Medical Education.  And

12    that means that it isn't the hospital that tells the residents

13    whether they get to advance to the next level or not, it's the

14    medical specialists in their training department who supervise

15    them day to day, working on what are called milestones, which

16    are the various procedures.  And then each day, each week, you

17    send into the American College of Graduate Medical Education

18    whether you've completed your milestones.

19         Now, they're evaluated on two -- two things,

20    performance and professionalism.  But under the conditions of

21    the federal residency grant, they're supposed to give

22    immediate feedback and training.  And that makes sense,

23    especially in the area of performance, because the part -- one

24    of the parties at interest in this case are the patients.

25    Our -- our national government recognized that.  We can't just

1   have a training program where it looks like it's on-the-job

2   training, the doctors get to do what they want to do with

3   citizens, so it's highly regulated.  And it -- and it's really

4   run by the specialists in the department.

5            And if a person is -- if a resident is performing

6   well, then they will get advanced to the next level of the

7   residency.  A neurosurgery residency is seven years with many,

8   many milestones.

9            And from year to year, the grant condition is such

10  that you have -- if -- if they think your performance is bad,

11  those surgeons watching over you every day over -- operating

12  on live patients, if they think your performance is bad,

13  they're supposed to give you a notice of possible nonrenewal.

14  And then you're supposed to have three months to remediate.

15           Well, there were no performance problems by

16  Dr. Kavianpour.  And so this termination violated the federal

17  grant conditions, hence, the two citations by the American

18  College of Graduate Medical Education of substantial

19  noncompliance.

20           Now, here's what's the irony of this whole thing.

21  The ACGME will get involved and decertify a med school or a

22  program.  But they do not get involved when a program is only

23  screwing over one -- one person.

24           And so in this case, we have deviations from the

25  grant conditions that result in the citations that say you

1    need to put her back.  And our contention has always been, and

2    it's undisputed, she had no performance problems.

3            Then you get to the drug testing issue.  And as a

4    matter of law, the first test was void.  She recognized that.

5    She went into the graduate medical education director and said

6    that test was wrong.  He said write a memo.  She wrote a memo.

7    They had to give her the second test.  By law, the first bad

8    test is neither positive nor negative, because its procedure

9    was bad.  By law, she passed the preemployment drug screening

10   test of Georgia.

11           They then hired her.  They could not have hired her

12   if she had tested negative.  Now, they could have gone to her

13   and said, Now, Dr. Kavianpour, would you mind -- would you

14   mind taking tests once a month for us?  Let's put that in your

15   contract.  And she would have said, Sure, just like she said

16   in some of those emails to I'll take your tests, but don't

17   interfere with my residency and don't make it a patient safety

18   issue.

19           So they -- but they didn't do that.  They issued the

20   August 18, 2018 memo, unilateral memo that put her, and only

21   her, on monthly drug testing.

22           Now, that's ironic because special needs -- the state

23   law is that any institution or county --

24           THE COURT:  May I interject for a moment?

25           MR. BATSON:  Sure.

1          THE COURT:  You started off by saying there was a

2    Grand Canyon between my understanding of the facts and your

3    understanding of what this case is about because this case is

4    about how our nation trains the residents.

5          Everything that you've said up until just now is not

6    what this case is about.  You've now gotten to what this case

7    is about.  And I would like you to continue.

8          MR. BATSON:  Okay, sure.

9          THE COURT:  But this case is not about all the other

10   stuff you've said it's about.  This case is now -- you've just

11   now turned to what this case is about and that is what

12   happened to your client, but that's not -- I'm going to give

13   you a caveat on that.  That's not what this case is about.

14   That's what the first case was about.  This case is about some

15   subset of that.

16         MR. BATSON:  Okay.

17         THE COURT:  So when you get to the point where this

18   is what this case is about, I want to make sure that we're

19   acknowledging this.  You've now touched on what this dispute

20   is about.  But you haven't yet gotten to what this case is

21   about.

22         MR. BATSON:  Gotcha.

23         THE COURT:  Okay.

24         MR. BATSON:  Bingo.  So where we have -- and we have

25   a doctor who's a resident, who's got adequate performance, and

1   should be promoted to the next level of residency.  And

2   certain procedures have to be in place and followed before

3   they cannot move her to the next level.  She was entitled

4   mutual expectation of continued performance, she was supposed

5   to go to the second gear.

6           So that is where we get to the end of K1.  They had

7   an obligation, and if this were -- if this were a school board

8   case, they had an obligation to do a Loudermill Hearing, as it

9   were.  They didn't do that.  The Loudermill Hearing would have

10  been the CCC hearing, where her performance is good,

11  therefore, we have to put her back and promote her to the

12  second year.

13          THE COURT:  So now you're touching on what your claim

14  is in this particular case.

15          MR. BATSON:  We're getting right to it.

16          THE COURT:  Okay.

17          MR. BATSON:  So K1 in context of a school board case.

18          THE COURT:  Oh, no.  I don't need it in context of a

19  school board case.  That's totally different law.  Let's keep

20  it in terms of what you're alleging here.

21          MR. BATSON:  Okay.  Back to it.  Because the state's

22  involved, she's entitled to a Loudermill kind of hearing,

23  which in this case would be the CCC hearing, just like the

24  ACGME says you've got to put her back.  They didn't do that in

25  K1.

1          So here comes -- here comes the lawsuit, the K1
2     lawsuit gets filed.  They know they're in trouble.  They've
3     investigated it.  The Board of Regents has told them the
4     hearing you gave, the process you provided before the lawsuit
5     was filed in K1 was bogus, no good.  You've got to do another
6     one.
7          And so then -- and then they have another idea.
8     Let's do something like a reinstatement, like a private -- in
9     a private case, you'd have that forward offer, unconditional
10    offer of reinstatement that would -- that could cut off
11    damages, so that's when they -- that's when they tried to do
12    the sham hearing again.
13         Well, in that -- in preparation for that, they say
14    we're going to -- we're going to have a hearing, we're putting
15    you back -- putting you on salary and we're going to have a
16    hearing.
17         We demand a list of the things that they're going to
18    bring up.  They don't provide it.  We then get a notice via
19    Melcher, via Bryan Webb, hearings going on a day from now or
20    an hour from now.  They don't allow lawyers there.  They
21    didn't give us any notice.  And the process that's supposed to
22    occur is full reinstatement, back in the hospital, back under
23    the supervision of the -- of the supervisors, medical
24    specialists in the department, is she performing right or not.
25         So they don't do that.  They send out the letter on

1    December 16 saying we're following HS13, the final decision is

2    through the Board of Regents, and then they start that sham

3    process.

4         We follow it, follow it, follow it, follow it, clear

5    down to the August 2020 Tate letter, which is the final

6    decision.  That is post-termination due process remedy, K1 is

7    pretermination due process, K2 is post-termination due

8    process.

9         THE COURT:  And when is termination?

10        (Multiple Voices Overlapping)

11        MR. BATSON:  And we followed --

12        THE COURT:  When is termination?

13        MR. BATSON:  Pardon?

14        THE COURT:  What is the date of termination?

15        MR. BATSON:  The final decision --

16        THE COURT:  No, no.  No, no.  You said K1 is

17   pretermination --

18        MR. BATSON:  Yes.

19        THE COURT:  -- due process.

20        MR. BATSON:  Yes.

21        THE COURT:  K2 is post-termination due process.

22        MR. BATSON:  Yes.

23        THE COURT:  So what is the date of termination as

24   you're using that word?

25        MR. BATSON:  It depends on which case you're talking

1  about.

2          THE COURT:  You're using the word.  You're trying to

3  define the two.

4          MR. BATSON:  No.

5          THE COURT:  No, no.  Listen to me.  We can't talk

6  over.  And I need to interrupt you when I'm trying to get

7  back, because I can't let you go on as long as you are and

8  then try to bring you back.  But when I start talking, you

9  have to stop.

10          You've said K1, the first case is pretermination due

11  process.

12          MR. BATSON:  Yes.

13          THE COURT:  You've said K2 is post-termination due

14  process.

15          MR. BATSON:  Yes.

16          THE COURT:  So I'm asking you what's the termination.

17  You're using the term.  What term are you using?  What's the

18  date of the term and the act that you're referring to as the

19  divide between the two cases?

20          MR. BATSON:  As the divide between the two cases,

21  because they never had a final hearing and because the final

22  decision was never sent from Tate before we filed K1, and that

23  was all delayed until we get into K2, there's only really one

24  final determination by Tate, one.  Everything else would have

25  been pretermination, they could have corrected it before then,

1    but they didn't.

2              THE COURT:  Okay.

3              MR. BATSON:  And the suspension morphed into de facto

4    became a termination because they wouldn't let her back in the

5    hospital.  They --

6              (Multiple Voices Overlapping)

7              THE COURT:  No.  Listen to me.  Listen to me.

8              MR. BATSON:  What?

9              THE COURT:  I'm going back to your terminology.  You

10   said the first case was pretermination due process.

11             MR. BATSON:  Correct.

12             THE COURT:  And the second one was post-termination

13   due process.  I'm using, and I hope you are using the term pre

14   to mean before and the term post to mean after.  That makes me

15   think that you have picked a time that something was before

16   and something was after.

17             And so I'm asking you what was that time?  What was

18   that thing that you were defining as termination so some

19   things could be before and some thing things could be after.

20             Do you understand the question?

21             MR. BATSON:  I understand the question.

22             THE COURT:  All right.

23             MR. BATSON:  And it's wrong.  The question's wrong.

24             THE COURT:  Okay.  So you do not --

25             (Multiple Voices Overlapping)

1          MR. BATSON:  Because, because --

2          THE COURT:  So you do not mean pre --

3          MR. BATSON:  May I --

4          THE COURT:  You do not mean pre --

5          MR. BATSON:  May I have a chance to explain?

6          THE COURT:  No.  No.

7          MR. BATSON:  Okay.

8          THE COURT:  I will give you all the time you need.

9  You don't need to start huffing and puffing.

10          MR. BATSON:  I'm not.

11          THE COURT:  I'm going to give you every bit of time

12  you want to speak.  But what I'm going to ask you to do is to

13  speak plainly.  That's all we ought to do as lawyers is to

14  speak plainly and directly.

15          And when you use a term like pre and post, and when I

16  then call you to your exact words, one case is pretermination,

17  one case is post-termination, I would expect that you could

18  answer directly what is the termination.  I know you've

19  defined the term as second termination.

20          MR. BATSON:  Yes.

21          THE COURT:  But what is the -- so that's clearly not

22  the termination.  So what is the pre and what is the post

23  termination?

24          And the only way we can define that is by determining

25  that thing with which some things happened before and some

```
 1  things happened after, so I'll ask you one last time.
 2          MR. BATSON:  Okay.
 3          THE COURT:  When you say pretermination and
 4  post-termination, what is the termination?
 5          MR. BATSON:  We filed the first case before there was
 6  a formal notice from them of the termination.  We filed the
 7  first case because they had never provided the pretermination
 8  process.  We didn't choose at that point and need to choose
 9  because there was no final termination yet.  So the final
10  termination only comes from Tate.  The first --
11          (Multiple Voices Overlapping)
12          THE COURT:  From eight, is that what you're saying?
13          MR. BATSON:  Tate, T-A-T-E.
14          THE COURT:  Okay.
15          MR. BATSON:  The letter.
16          THE COURT:  Are you saying that's --
17          MR. BATSON:  The letter.
18          THE COURT:  -- the August of 2020?
19          MR. BATSON:  The letter, the letter.
20          THE COURT:  Okay.
21          MR. BATSON:  Correct.
22          THE COURT:  That's the final termination.
23          MR. BATSON:  Yes.
24          THE COURT:  So there's no prior termination.
25          MR. BATSON:  De facto termination.  The minute --
```

1 from February the 19th -- from February of 2019 forward to --

2          THE COURT:  To when?

3          MR. BATSON:  To today.

4          THE COURT:  Is the first termination?

5          MR. BATSON:  No.  That's the first blocking of --

6 you -- they suspended her and they wouldn't give her a

7 pretermination hearing.

8          So de facto, she can't go work in the residency and

9 complete her first year, which is the only thing she --

10 that -- the only way she can get a license is complete the

11 first year.

12          THE COURT:  So you use the term pretermination and

13 post-termination and second termination without regards to the

14 prefixes pre, post or the word second?

15          MR. BATSON:  May I -- you lost me there.

16          THE COURT:  You used the word pretermination, the

17 term post-termination without regard to what pre and post

18 mean, because you can't define termination.

19          And then you used the term second termination to

20 refer to the August 2020 letter without being able to define a

21 first termination, but okay.

22          I don't know why one should expect -- I would expect

23 that when you say pre and post termination --

24          Do you know what he means?  Defense, anybody on the

25 defense know what he means by that?

```
 1              MR. THREKELD:  What Mr. Batson means?

 2              THE COURT:  Yes.

 3              MR. THREKELD:  Not exactly.  I mean, I believe the

 4   relevant analysis is what was the termination or the wrongful

 5   conduct that led to Kavianpour one and was pled in Kavianpour

 6   one and in the amended complaint.

 7              And then, to my mind, once it was pled in the amended

 8   complaint in Kavianpour one, although my clients really had

 9   nothing to do with the second hearing or the reinstatement, at

10   that point, there was a final termination.  I think that's --

11   of the -- of the residency and so --

12              (Multiple Voices Overlapping)

13              THE COURT:  The August?

14              MR. THREKELD:  I would say it was earlier.

15              THE COURT:  Middle of that year?  When?

16              MR. THREKELD:  I would say earlier, in the spring, in

17   January when she was notified of the results.  And as she pled

18   in Kavianpour one, in the amended complaint, she complained

19   about the process for the CCC hearing.  I mean, at a minimum,

20   that's a final date for termination, to assess.

21              Or really, from our perspective, Your Honor, it's a

22   final date to assess when Dr. Kavianpour knew or should have

23   known that she had been wronged or allegedly wronged in some

24   way, which we think is the operative analysis for purposes of

25   res judicata and collateral estoppel for Kavianpour two.
```

```
 1              THE COURT:  See, I think, I think this case is almost
 2   exclusively about what happened from December of 2019 until a
 3   decision in 2020, when she was, quote, reinstated, and then
 4   was promised or some representation as to the CCC --
 5              Is it CCC?
 6              MR. THREKELD:  Yes.
 7              THE COURT:  And the ad hoc.  And it did not go and
 8   meet her expectations, either as to the process or the
 9   outcome.  I think that's what this case is about.
10              Is that not right?
11              MR. BATSON:  You're getting warm there.  That's the
12   way I had --
13              THE COURT:  Okay.  So tell me what Count One is.
14   What is Count One?
15              MR. BATSON:  Count one --
16              (Multiple Voices Overlapping)
17              THE COURT:  Tell me what the facts are --
18              MR. BATSON:  Do you mean Count Five or Count One?
19              THE COURT:  I mean Count One.
20              MR. BATSON:  All right.  Let me pull it up.
21              THE COURT:  Why do you want to go to Count Five?
22   That's the process?
23              MR. BATSON:  That's the one -- that's the one where
24   you said -- you said you didn't see any facts really about --
25   that occurred post -- yeah, that occurred post K1.
```

1          THE COURT:  I have looked through this complaint

2    ad nauseam in order to try to glean what new ground and new

3    claims there are that weren't already placed before the Court

4    or you had an opportunity to pursue and are barred by

5    res judicata.

6          And when I do that, it is hard for me to understand

7    that almost anything prior to at least December of '19 is

8    involved here.  It's hard for me to understand that.

9          But I'm trying to make sure that I'm giving you every

10   opportunity there is.  But the problem is, in my opinion, as

11   the consumer of your complaint, you drown everything that is

12   viable with an over-enunciation and reliance upon things that

13   I think are past and not part of this case.  I have a hard

14   time.

15         So just tell me, Count One is both an ADA and a

16   Rehabilitation Act Claim.  What is it that you allege in Count

17   One?

18         Just tell me in your words as the lawyer who's

19   drafted now three complaints and been looking at this in

20   preparation for today.

21         Tell me what you say Count One is.

22         What do you allege there?

23         MR. BATSON:  Here's -- in the -- in the decision, in

24   the CCC hearing we say is a sham, they once again rely on

25   essentially she's a drug addict kind of things.

1          THE COURT:  So Count One is about the CCC hearing.

2          MR. BATSON:  Count One is about they continue to

3  portray her as a drug addict in order to prevent her from

4  being reinstated into the federal residency grant program as

5  required by the conditions of the federal residency grant

6  using -- regarding her as being a drug addict.

7          THE COURT:  Okay.

8          MR. BATSON:  To this day --

9          THE COURT:  Mr. Threlkeld or Mr. Webb or Mr. Kolb or

10  any of you-all, is that what you think Count One is about?

11          MR. KOLB:  Well, Count One is a retaliation claim.

12  So retaliation under ADA and Rehab Act, I believe, in response

13  to the filing of the lawsuit.  And to the extent that they

14  anchor it in the January CCC hearing, she was invited to

15  attend that hearing, she declined to attend that hearing,

16  despite receiving three weeks' notice, despite having meetings

17  with her program director in K1, that was all fleshed out in

18  K1.

19          So she decided not to attend.  CCC issues its

20  recommendation to Dr. Macomson, he accepted it, there's a

21  nonrenewal, and the basis for that nonrenewal are all laid out

22  and provided to her.

23          So, I mean, I understand that they've got a

24  retaliation claim here, but there were numerous legitimate

25  reasons for the nonrenewal.

1          MR. BATSON:  I did leave out the retaliation aspect

2     of it also.

3          THE COURT:  So I'm going to give you another chance.

4     Give me in a couple of sentences or go on for a couple of

5     minutes and tell me what you claim in Count One.

6          MR. BATSON:  Let me pull it up.

7          THE COURT:  What you claim in Count One that you say

8     is distinct from Kavianpour -- the first case.  Because the

9     facts alleged go way, way, way back.

10         MR. BATSON:  There are -- you can plead background

11    facts to show why --

12         (Multiple Voices Overlapping)

13         THE COURT:  Okay.  Fair enough.

14         MR. BATSON:  -- where you get?

15         THE COURT:  Tell me what the claim is.

16         MR. BATSON:  The claim is that some of the reasons

17    they used to terminate her again, they regard her as a drug

18    addict, when, in fact, that is not true and they know that.

19         And it's also retaliation, because we were trying to

20    protect her ADA rights in the first case, but they continue on

21    doing that through the sham hearing in December on into

22    January and then we go all the way through.

23         And because of the notice that she gets saying you

24    have to take it all the way through to a final hearing with

25    the BOR, we follow what they say the rules are under HS13 and

1  *McKinney v. Pate* says you can't do anything about due process

2  until you get a final hearing.

3       THE COURT:  I'm going to ignore the fact that you

4  said terminate her again because I don't think you mean by

5  that that she was terminated before.

6       MR. BATSON:  Well, maybe you and I really need to

7  understand -- I want you to -- I would love for you to

8  understand my discussion of what that is, is it's a de facto

9  termination.

10      THE COURT:  And when did that occur?

11      MR. BATSON:  It occurs the moment they pull her out

12 of the hospital and she doesn't go again.

13      THE COURT:  Okay.  So that would have been sometime

14 in 2019.

15      MR. BATSON:  But that is just a suspension at that

16 point in time as a matter of law.  That is just a suspension

17 with a right to a pretermination review of the legality of

18 whether they can suspend her, terminate her, not let her go

19 back into the clinic, because this is a federal residency

20 training program subject to grant conditions under the ACGME,

21 and those grant conditions were violated, hence, to

22 substantial noncompliance certificates from the American

23 College of Graduate Medical Education, which --

24      THE COURT:  Does that give your client a private

25 right of action?

```
1              MR. BATSON:  It -- well, it's -- it's a public --
2    it's a public grant that they oversee and they get to bill for
3    the procedure she does.  They get extra money for training
4    her.  But they have to follow the grant conditions to do that.
5    So it's a mixed bag as to whether it's a public right, a
6    private right or whatever, but the point is --
7              THE COURT:  Isn't that just an accreditation issue?
8    Isn't that what that is?
9              MR. BATSON:  No, it's a grant condition.
10             THE COURT:  What does the defense say?
11             MR. THREKELD:  Your Honor, it's an accreditation
12   issue.  We don't see the relevance of that to the claim of
13   retaliation or the First Amendment retaliation claim or any of
14   the other claims in the Kavianpour two.
15             THE COURT:  All right.  So in Count --
16             MR. BATSON:  Your Honor, may I respond to that?
17             THE COURT:  No.  I understand how you feel.  Go
18   ahead.  Go ahead.
19             MR. BATSON:  Okay.  The -- it is a grant condition.
20   And what can happen is they can lose -- the school can lose
21   its certification.  But this process that the government --
22   and actually, the DOJ is looking into right now restrain a
23   trade on -- on residents.
24             But the ACGME won't come to bat and decertify a whole
25   program if a residency program is just screwing over one
```

```
 1  resident.  Now, they make exceptions when a doctor is sexually

 2  harassing a --

 3          THE COURT:  But what you're talking about is

 4  accreditation.

 5          MR. BATSON:  No.

 6          THE COURT:  No, you are absolutely, you're talking

 7  about --

 8          MR. BATSON:  No.  No.  It's part of the contract.

 9          THE COURT:  No.

10          MR. BATSON:  It's part of the --

11          (Multiple Voices Overlapping)

12          THE COURT:  You have to stop talking --

13          MR. BATSON:  All right.

14          THE COURT:  -- when I'm speaking.

15          MR. BATSON:  Okay.

16          THE COURT:  You have to stop talking.

17          MR. BATSON:  All right.

18          THE COURT:  What you're talking about is an

19  accreditation.  To the extent it matters here, it would only

20  matter here if it somehow provided your client a cause of

21  action or a right or maybe, maybe what you would say is some

22  type of expectation of process, I don't know.

23          But otherwise, this thing about restraint of trade or

24  how the federal government is involved, none of that matters

25  here.  This is way, way simpler than some grand idea that
```

1    we're attacking restraint of trade or what you started with

2    is --

3            MR. BATSON:  All right.  The -- she -- her rights

4    come from the fact that there is a contract.

5            THE COURT:  How our nation's residents are trained --

6            MR. BATSON:  There -- is a --

7            THE COURT:  -- that is not what this case is about.

8            MR. BATSON:  Well, that's where all the money comes

9    from and that's what governs all those -- the conditions of

10   what she's entitled to.

11           THE COURT:  See, but that --

12           MR. BATSON:  There is a -- there is a contract, and

13   the contract adopts the procedures of the ACGME to protect the

14   residents from scrupulous [sic] training programs or ones that

15   would make residents work in such a manner that they

16   jeopardize the safety of the public patients.  So it's -- it's

17   highly regulated and there's a contract that explains the

18   process to protect the residents.

19           Further, she has a mutual expectation and they have a

20   mutual expectation she will advance to the second level,

21   because she's met all of her milestones, they did not give her

22   notice of a need to remediate.  And if -- if it were

23   otherwise, those doctors supervising her in every procedure

24   she's learning, she's learned, they were letting her commit

25   malpractice on the patients if they didn't correct it

1  immediately, so they have a duty --

2          THE COURT:  I thought that's why Coule suspended her

3  clinical privileges rather quickly.

4          MR. BATSON:  Well, here we go.  I'm glad you brought

5  that up.  You don't know how glad I am you brought that up.

6          THE COURT:  Well, but hold on.

7          MR. BATSON:  But that letter --

8          (Multiple Voices Overlapping)

9          THE COURT:  Hold on.  Hold on.

10          MR. BATSON:  That letter --

11          THE COURT:  Hold on.  You have to stop talking when I

12  speak.

13          MR. BATSON:  Okay.

14          THE COURT:  That's Kavianpour one.  That's got

15  nothing to do with this case unless, unless there was, within

16  the statute of limitations, some new wrong that occurred.

17          But haven't I already ruled on that decision?

18          MR. BATSON:  All right.  You started with the Coule

19  decision, the Coule decision --

20          THE COURT:  I didn't start there.  You started there

21  because you were claiming it would somehow be malpractice and

22  I was saying, well, hold on, they did act pretty quickly.  But

23  I'm not trying --

24          MR. BATSON:  No, okay.  All right.

25          THE COURT:  -- to go back into old time.

1          MR. BATSON:  Okay.  We'll start with the malpractice.

2     There was no information from anyone at the department level

3     who supervised her in her medical procedures to create the

4     Coule letter.  The Coule letter came exclusively from Norton

5     and Arnold, based on blocking her from taking a test during a

6     period that was lawful under the policies and where that drug

7     testing in the first place was not pursuant to contract.

8          So they then did not like her complaining about the

9     fact that -- she was complaining about the timing of the

10    testing interfering with patient safety.  They didn't like

11    that.  So they then decided she's got to go, so they -- they

12    worked together, they schemed together to do this letter to

13    make her look like she might have drug problems.

14         Then they used that letter to terminate her, her

15    faculty still is saying, no, she's a good performer.  And her

16    faculty was misled at that point to believe that they couldn't

17    overturn Coule and anybody above that, when, in fact, as a

18    matter of the federal grant conditions, they could.

19         They recommended suspension.  And the reason they

20    recommended suspension, they were misled to believe that she

21    had to do the drug testing.  And that was from a department

22    that did not have a safe pager policy to protect the public.

23         THE COURT:  Okay.  None of which --

24         MR. BATSON:  Okay?

25         THE COURT:  -- is part of this case.

 1            Do you think that's part of this case?

 2            MR. BATSON:  It becomes a part of this case because

 3    in the decision, in the CCC decision, they use the drug stuff

 4    to issue the letter in January saying, oh, we aren't letting

 5    her back in, she's a -- she is a professionalism and a

 6    performance problem because of the drug stuff, so here we go

 7    again.  It's Coule's letter.

 8            Even though if she's really an addict, then -- then

 9    the specialist in her department are letting her operate on

10    people day after day for five months and not saying a thing

11    about it.

12            THE COURT:  Well, again, this is -- I regret having

13    challenged that statement before because it just led us into a

14    discussion that I don't think has anything to do with this

15    case.

16            MR. BATSON:  All right.  So --

17            (Multiple Voices Overlapping)

18            THE COURT:  But I think that what --

19            MR. BATSON:  So --

20            THE COURT:  I thought that that's what -- is it Coule

21    or is it Coule?

22            MR. THREKELD:  Dr. Coule.

23            MR. BATSON:  Coule.

24            THE COURT:  I thought that's what Dr. Coule was

25    concerned about.

1          MR. BATSON:  Coule -- Coule cooperated with them

2   to -- to get a letter.

3          THE COURT:  I'm not --

4          MR. BATSON:  And then that --

5          THE COURT:  No.  I don't need to get into that.  I

6   think that's all very much what you have in front of the

7   Eleventh Circuit.  And if they tell me I have to get back into

8   that, I'll get back into that, but that's not part of this

9   case.

10         MR. BATSON:  It is part --

11         THE COURT:  No.

12         MR. BATSON:  They made it part of this case by

13  putting it in the next decision of the sham hearing.

14         THE COURT:  Okay.  Well, that could be.

15         MR. BATSON:  There's no question.

16         THE COURT:  You can argue that part of this case was

17  the continued reliance on that.

18         MR. BATSON:  And then --

19         (Multiple Voices Overlapping)

20         THE COURT:  But you have to stop interrupting me.  I

21  know you feel passionate, but you have to stop interrupting

22  me.

23         Okay?

24         I know I get to interrupt you because I'm trying to

25  ask questions and keep this moving.  But you cannot just

```
 1  interrupt me whenever you want.

 2          Do you understand?

 3          MR. BATSON:  Yes.

 4          THE COURT:  Okay.  How do we proceed?

 5          Do you-all have -- does anybody have an idea about

 6  how we proceed?

 7          Because I think this complaint is still improperly

 8  pled.  I don't think it's fixed a lot of the problems, but no

 9  one has raised that.

10          And so you-all tell me what's the best way to move

11  forward, to accomplish what I want to accomplish, which is to

12  make sure that this case does not relitigate issues that were

13  already decided, that are barred by the statute of limitations

14  or that are barred by res judicata and also not result in

15  thousands of pages of needless litigation, churning things

16  like happened in the first case?

17          Tell me how we ought to do that.

18          MR. BATSON:  We ought to -- I'll provide you with the

19  copies of all the briefs from the Eleventh Circuit.

20          THE COURT:  What?

21          MR. BATSON:  And you can review those.

22          THE COURT:  You cannot --

23          MR. BATSON:  And you can decide about --

24          THE COURT:  -- be serious.

25          MR. BATSON:  And you can decide about what the best
```

1    course of action would be in your case here.

2              THE COURT:  Time out.  Stop.  Stop talking.

3              MR. BATSON:  Why?

4              THE COURT:  Because you're interrupting me again.

5    You cannot be serious that what you want me to do is to review

6    the Eleventh Circuit briefing and then glean myself how to do

7    it.  If you want me to do that, do you know what I would do.

8              MR. BATSON:  What?

9              THE COURT:  Here would be mine.  If you're telling me

10   I have the authority, I'm going to give you 25 pages to

11   replead each count only alleging things that happened after a

12   certain date.  I'll take the last date that you have in

13   Kavianpour one amended complaint and say I'm giving you 25

14   pages to plead any new claims that occurred after that date.

15   That would be mine.  So if that's the way you want to go, I'll

16   go read all of this other stuff, but I don't think that's my

17   job.

18             MR. BATSON:  All right.  When there's a --

19             THE COURT:  So do you want me to do that?

20             MR. BATSON:  May I speak?

21             THE COURT:  Yes.

22             MR. BATSON:  Okay.  So when there's a --

23             (Multiple Voices Overlapping)

24             THE COURT:  You have to answer my question.

25             Do you want me to do what you said, do you want me to

1  go read the Eleventh Circuit and then it's up to me as to how

2  you proceed?

3  　　　　MR. BATSON:  I want you to hear what I have to say.

4  And what I would have -- what I would say is in a circumstance

5  where there's a case on appeal and a second case down below,

6  it might be most judicious for the Court to consider what

7  might get reversed before it jumps and goes down the river in

8  a way that might make things even worse, so that's -- that

9  would be my advice.

10  　　　　THE COURT:  So I should stay this case pending the

11  outcome of the Eleventh Circuit?

12  　　　　MR. BATSON:  I think you should review what's in the

13  Eleventh Circuit and make a substantive decision.  That's what

14  I would do.

15  　　　　THE COURT:  Do you-all want me to stay this case

16  pending the Eleventh Circuit?

17  　　　　MR. THREKELD:  No, Your Honor.

18  　　　　And I know you asked us to think about creative

19  solutions to move the case along.  And from the perspective of

20  my client, the hospital, its general counsel, Mr. Speese, and

21  Dr. Coule, when we read this complaint in Kavianpour two, it's

22  very difficult -- it's not possible to discern any alleged

23  actions that happened by Dr. Coule after the original

24  suspension.

25  　　　　So there seems to be one paragraph that alleges upon

1  information and belief, he may have said keep her suspended

2  but there's no facts that are alleged.  And so it's very

3  challenging for us to think about, well, how do we respond to

4  a claim like this, other than to revert back to what

5  Your Honor put in the order.  And that is for us to brief the

6  issue of when did this claim accrue.  And we recognize we did

7  not hone in on that enough in our original briefing.

8         We think the case law on this is going to be clear

9  and under the allegations it will be very early in 2020 when

10  she alleges that she was wronged by this CCC hearing, that's

11  when she knew or should have known that there was an alleged

12  retaliation against her and everything flows from there.

13         So we would like to brief that again.  And we would

14  like to hone in on the issue of privity, particularly for

15  Mr. Speese, because we think, Your Honor, that the law will be

16  clear that as counsel to Dr. Coule and AU Medical Center, who

17  was responsible for advising them on what the prerogatives

18  were of Dr. Coule to try and maintain a culture of safety in

19  early 2019, that that sort of conduct, it plainly puts him in

20  privity, even as a private citizen, as private counsel with

21  his client, AU Medical Center.  So we'd like to brief those

22  two issues.

23         We gave some thought as to whether it would be

24  helpful to provide an affidavit by Dr. Coule that he was not

25  involved in the alleged actions that purport to give ground to

1  a retaliation claim in Kavianpour two.  I believe that his

2  deposition testimony generally said that, so we thought about

3  giving an affidavit to that effect.  But candidly, I don't

4  want to open up discovery in this matter.  We don't think it's

5  necessary or particularly productive, given the allegations

6  and what you can hone in on, on the date of the accrual of the

7  second alleged action, which we think when you hone in on that

8  shows that all these claims are barred by the two-year statute

9  of limitations, so that's how we would propose to proceed.

10 And I don't know about the Board of Regents.

11        THE COURT:  Okay.  So doesn't that sound like a good

12 idea?

13        MR. BATSON:  Well, let's back up first about

14 Dr. Coule.

15        THE COURT:  No, can you just answer my question

16 first?

17        MR. BATSON:  The -- the --

18        THE COURT:  Does that sound like a good idea to you?

19        MR. BATSON:  What?  To do what he just said?

20        THE COURT:  Yes.

21        MR. BATSON:  What do you want me to say?  Yes?  No.

22 No, I don't think so.

23        THE COURT:  I want you to answer the question.

24        MR. BATSON:  Yeah, okay.

25        THE COURT:  I want you to answer the question.

1   Rather than going off on a tangent, answer the question.

2         MR. BATSON:  I think you should review what's in the

3   Eleventh Circuit, review where we are here, and make up your

4   mind about what we should do.  That's what's I think.

5         THE COURT:  Well, okay.  I don't --

6         (Multiple Voices Overlapping)

7         MR. BATSON:  And if -- and if it's to stay this case,

8   we live with that.  If it's to go forward with the case, we

9   live with that.

10         THE COURT:  And if I tell you --

11         MR. BATSON:  Also that --

12         THE COURT:  -- that it's that you have to --

13         MR. BATSON:  -- I'm not --

14         THE COURT:  If I tell you that you have to file a new

15   complaint within 20 pages and only rely upon facts after some

16   date, you'll do that?

17         MR. BATSON:  What I would do is I would file a

18   response to that and say that would deprive us of due process

19   and equal protection.

20         THE COURT:  You don't really mean you will --

21         (Multiple Voices Overlapping)

22         MR. BATSON:  And -- and --

23         THE COURT:  -- follow my lead on that?

24         MR. BATSON:  And then I would do whatever you tell me

25   to do.  But I would paper my record to try to protect my

1  client, so that's what I would do.

2         THE COURT:  Okay.  All right.  So let me ask you

3  this.

4         For Coule and Speese, does that take care of AUMC

5  completely?

6         MR. THREKELD:  Yes, sir, Your Honor.

7         THE COURT:  Okay.  Do you allege that Coule was

8  involved in any of the conduct after his decision to suspend

9  her clinical privileges?  That decision was made in mid-'19;

10  is that right?

11         MR. THREKELD:  I believe March of '19.

12         THE COURT:  Okay.  And do you believe that that was

13  the end of his involvement?

14         MR. THREKELD:  Yes, Your Honor.

15         THE COURT:  And what about Speese, what was the last

16  thing he did?

17         MR. THREKELD:  Well, he was serving as in-house

18  counsel, so, I mean, there's really no allegation about

19  anything that he did from the time of the suspension

20  prospectively.  He wasn't involved in any of the hearings or

21  any decision to reinstate her, so it's difficult for me to

22  glean what's alleged about him other than to toggle back to

23  2018, when there is a paragraph that he attended a meeting

24  where there was supposedly several people involved and they

25  were talking allegedly about how to deal with Dr. Kavianpour

1    and Dr. Kavianpour complains about statements made in that

2    meeting.

3             THE COURT:  Do you think Coule was involved in

4    anything after that first suspension decision?

5             MR. BATSON:  My -- my -- the way I look at this is

6    there is an ongoing conspiracy to prevent her from being

7    reinstated.  And as a result of that, anybody who was involved

8    in the conspiracy that created the suspension that resulted in

9    the reinstatement and reinstatement of the suspension is part

10   of that conspiracy.

11            And unless and until Dr. Coule -- or Mr. Speese shows

12   on the record an affirmative rejection of that, which would

13   mean that they should take affirmative action to reinstate

14   her, they are part of the ongoing conspiracy that is still to

15   this day, in spite of the grant condition party saying she

16   should be reinstated, she has not been reinstated.

17            THE COURT:  Okay.  Here's what I think we should do.

18   This is an idea and we can talk about it.  I think --

19            MR. BATSON:  Your Honor, should I -- may I sit down

20   or should I stand?

21            THE COURT:  Yes.

22            MR. BATSON:  Okay.  Thank you.

23            THE COURT:  I think the plaintiff should file

24   something in less than 20 pages that describes with citations

25   to the complaint the basis for Coule's liability for the

1  charge at issue in this case.  It must set, I think, and I'm

2  open to you-all adding to it, the dates on which he allegedly

3  did something.  Or if it is simply -- if it is simply that he

4  made a decision in March of 2019 to suspend her, and then

5  failed to do anything after that to undo the impact, you can

6  simply say that.

7          I think that's what I'm hearing today, that there was

8  a decision in 2019 to suspend and there's no claim that he did

9  anything after that other than not stop the impact.  You're

10  nodding at me as though correct.

11          Is that correct?

12          MR. BATSON:  Yes, he failed to correct.  And they had

13  a duty to correct and they failed to correct pursuant to the

14  grant conditions.

15          THE COURT:  Okay.  All right.  So you say that Coule

16  did not do anything affirmative after the decision to suspend

17  the first time in March of '19, but that he failed to undo it,

18  even though he had a duty to undo it?  You nodded and winked

19  as if yes.

20          MR. BATSON:  Yes.

21          THE COURT:  Okay.  Now, defense, do you understand

22  that?

23          MR. THREKELD:  Yes, Your Honor.

24          THE COURT:  So now I think -- is that enough for you

25  to litigate statute of limitations and res judicata on that

1  person alone --

2          MR. THREKELD:  Yes, Your Honor.

3          THE COURT:  -- for each of the claims or should the

4  plaintiff come forward and say why that decision by him gives

5  rise to liability under the various claims or do you think you

6  can handle that in your pleading?

7          MR. THREKELD:  Well, we don't think it does as a

8  matter of law, so I think --

9          THE COURT:  You don't think what does?

10         MR. THREKELD:  We don't think there is continued

11 liability because he didn't intercede to reverse his decision.

12 We don't think there is any basis for an additional accrual of

13 liabilities.

14         And we think the Eleventh Circuit case in *Atchison v.*

15 *Board of Regents* is squarely on point on that, but --

16         THE COURT:  So you think you have enough to brief

17 this discrete issue?

18         MR. THREKELD:  Yes.

19         THE COURT:  Res judicata, statute of limitations on

20 Coule based on the contention that although he didn't do

21 anything new after March of '19, he had a duty to undo it that

22 he did not undo?

23         Yes, sir?

24         Wait.  Hold on.

25         MR. BATSON:  Yes.

1          THE COURT:  Do you think you have enough?

2          MR. THREKELD:  Yes, Your Honor.

3          THE COURT:  Yes, sir.

4          MR. BATSON:  There may be other facts after March.

5   In fact, I remember in November, he is saying that --

6          (Multiple Voices Overlapping)

7          THE COURT:  No, wait.  Hold on.  You just were so

8   clear.  You winked at me and nodded as if to say --

9          MR. BATSON:  No, I was --

10          THE COURT:  Hold on.

11          -- as if to say he didn't do anything else.  Now

12   you're telling me he did something else?

13          MR. BATSON:  He's saying that there wasn't anything

14   else.

15          THE COURT:  Yes.  I said the same thing.

16          MR. BATSON:  Hold on.  May I finish?

17          Our duty of pleading the complaint is to plead a

18   plausible claim.  We have not done discovery about what Coule

19   actually said or did between January and August of -- woops --

20   August of 2020, so I don't know.  All I know is that there was

21   in fact one other incident in November where he is basically

22   saying to go through the process.

23          THE COURT:  November of 2019?

24          MR. BATSON:  '19.  To -- to -- he is telling the

25   Board of Regents that he should -- that we need to go through

1   the ACGME process, but nothing else was done about that.  And

2   then that's when they moved into the sham hearing, so we

3   didn't -- I don't think we pled that -- I think maybe it's in

4   there.  I can't remember.

5           THE COURT:  Okay.  But hold on.

6           MR. BATSON:  But that was November.

7           THE COURT:  Hold on.  At some point, you've got to

8   work with what you've got.  So I'm just going to ask you this.

9           In your complaint, what have you plausibly alleged

10  that he did after the fact, after the initial suspension, what

11  have you plausibly alleged that he did after that?

12          MR. BATSON:  As to an affirmative act, nothing.

13          THE COURT:  Okay.

14          MR. BATSON:  Okay.  But I don't know but what he

15  might have had further affirmative influence to push and help

16  the conspiracy to continue through and including to today.

17          THE COURT:  Sure, but that's --

18          MR. BATSON:  Okay.

19          THE COURT:  You're saying if you get discovery

20  against him, you could find that he did more.

21          Is that what you're saying?

22          MR. BATSON:  Well, yes.  But your -- your main point,

23  the biggest point is what you said before, your -- your

24  analysis of yes.

25          Our theory is an ongoing conspiracy, they have a --

1  he had a duty contractually and he had a duty -- if you're in

2  a conspiracy, you have a duty to affirmatively do something to

3  show you're stopping it, getting out.

4          THE COURT:  Okay.  That's fine.  You're going to take

5  that on, right?

6          MR. THREKELD:  Yes, Your Honor.

7          THE COURT:  Okay.  But, Mr. Batson, here's the point.

8  We are at the pleading stage.

9          MR. BATSON:  Yes.

10         THE COURT:  If they have a statute of limitations

11 defense, they can raise that at the pleading stage.  Their

12 pleading is that on the face of the complaint, it's barred by

13 the statute of limitations.  That's their burden.

14         You can't rely upon things that you might find in

15 discovery to avoid that if they say the face of the complaint

16 is sufficient.

17         You've told me right now -- I think your position is

18 you have no affirmative evidence that he did -- you have not

19 pled --

20         MR. BATSON:  Wait.  Hold on.

21         THE COURT:  -- that he did anything after that date

22 other than not correct and you say he had a duty -- or not

23 undo and you say that he had a duty to undo it so he was part

24 of an ongoing conspiracy.

25         MR. BATSON:  Let me clarify your language a little

1  bit.

2            THE COURT:  Oh, okay, because I'm not --

3            (Multiple Voices Overlapping)

4            MR. BATSON:  Because we affirmatively --

5            THE COURT:  Listen to me.  I'm not trying to be

6  hypertechnical.  I'm trying to be plainspoken.

7            MR. BATSON:  Okay.

8            THE COURT:  So if you're larding up a word with some

9  meaning, I need to know it.  Okay?

10            MR. BATSON:  All right.  The word I had trouble with,

11  we -- when you said we had no affirmative evidence, in the

12  sense that to -- to prove withdrawal from a conspiracy, the

13  burden is on Dr. Coule to prove affirmatively that he did

14  withdraw.  So and my characterization of that evidence is the

15  absence of evidence is affirmative proof that he's continuing

16  in the conspiracy.  That was all I wanted to clear up.

17            THE COURT:  And that is an argument you can make as a

18  matter of law.

19            MR. BATSON:  Okay.  Okay.

20            THE COURT:  But I'm trying to make sure that we're

21  putting spences around this.  You have said you have not

22  plausibly alleged his active involvement after the suspension

23  decision other than his failure to undo.

24            MR. BATSON:  Well, we had -- I don't know of a fact

25  offhand where I said Dr. Coule was at X and X meeting.

1          THE COURT:  Okay.  Take a minute, look at your

2  complaint.  Or you can do it in your response.

3          But you-all can plead that issue.  Okay?  You-all can

4  brief that discrete for Dr. Coule.

5          Does that give you some of what you want?

6          MR. THREKELD:  Yes, Your Honor.

7          We would like to brief the same issue for Mr. Speese

8  as well.

9          THE COURT:  What do you have on Mr. Speese?

10         MR. BATSON:  All right.  Do you know who -- what's

11  your understanding of what his role is so I can minimize --

12         THE COURT:  I believe he was an in-house attorney.

13         MR. BATSON:  All right.  He's a compliance person.

14         THE COURT:  Okay.

15         MR. BATSON:  He's supposed to make sure that the

16  process they provide the residents --

17         THE COURT:  Hold on a second.  Yes.

18         MR. THREKELD:  Your Honor, that is not alleged in the

19  complaint that he is a compliance officer for AU Medical

20  Center.  And he was the general counsel at the time.

21         THE COURT:  Okay.  So let's just say this.  What you

22  have alleged in the complaint that he did, let's say, after

23  the same time as the initial suspension by Dr. Coule?

24         MR. BATSON:  Any reference in the complaint to

25  John Lott and discussions with Speese, who was the attorney.

1  John Lott was a compliance person, they hired him to be a

2  compliance person.  Lott confronts Norton -- Norton and

3  Speese, at least, in this conversation in July of 2018, saying

4  you've got to put her back, you're not following the --

5           THE COURT:  Hold on.  Let me re-ask my question.

6           MR. BATSON:  -- the contract.  And that's -- that's

7  Speese involved in that.

8           THE COURT:  Okay.

9           MR. BATSON:  So that's our last -- he may have been

10 interviewed by the Board of Regents.  I can't remember.  There

11 may be -- and now that we're at this point, I may go back and

12 look at other evidence and say, hey, oh, yeah, Speese did this

13 in the fall.

14          THE COURT:  Hold on.  You can't do that right now.

15 We're in the middle of this issue, we're evaluating your

16 amended complaint.  You're thinking you are going to go do

17 another amended complaint now?

18          MR. BATSON:  I don't know.  We're discussing

19 procedures of what we're going to do, right?

20          THE COURT:  Okay.  Well, I'm trying to move --

21          (Multiple Voices Overlapping)

22          MR. BATSON:  I'm a little confused by this, quite

23 frankly, because --

24          THE COURT:  Why?

25          MR. BATSON:  Because if we -- if we -- I don't know,

 1  you're saying we have the burden of this or that.  And I'm

 2  saying that we don't.  They have the burden to show he

 3  withdrew from the complaint.

 4          THE COURT:  I've not said anything about burden of

 5  withdrawing.  I've said they have a burden -- at a motion to

 6  dismiss, the defendant has the burden of showing that a

 7  statute of limitations defense is apparent on the face of the

 8  complaint.

 9          Does anybody disagree with that black letter law?

10          MR. THREKELD:  No, Your Honor.

11          MR. BATSON:  No.

12          THE COURT:  Do you?

13          MR. BATSON:  No.

14          THE COURT:  Okay.  That's all I've said about that.

15          MR. BATSON:  Okay.

16          THE COURT:  They're moving to dismiss.  They've got

17  whatever burdens the motion to dismiss puts on them.

18          But you're limited to your well-pled allegations at

19  this point and they're allowed to attack your well-pled

20  allegation.  That's all I'm saying.

21          MR. BATSON:  Okay.

22          THE COURT:  If they have the burden of proving --

23  you've got this idea of they've got the burden of proving

24  withdrawal from a conspiracy, and therefore, the absence of

25  evidence is evidence that they did not withdraw.  But I didn't

1   buy into that or contradict that.  I said well, that's

2   something that you can brief.

3        Okay.  So it appears to me as though -- and you can

4   read the complaint, but it appears to me as though Mr. Batson

5   has conceded that the last act they know of attributable to

6   Speese, and I'm assuming that because of the prior guy, Tate,

7   is that his name?  No, not Tate.  Who is the other lawyer --

8   did Speese take over for somebody?

9        MR. THREKELD:  No, he was acting on behalf of the

10  medical center whereas Mr. Melcher was acting on behalf of --

11       THE COURT:  No, he referred to somebody else who did

12  something.

13       MR. BATSON:  John Lott.

14       MR. THREKELD:  That was a temporary compliance

15  officer, yes.

16       THE COURT:  So let me just try to make sure.  What

17  are the allegations in this complaint about what Speese did?

18       Mr. Batson, what are your current well-pled

19  allegations against Speese?

20       MR. BATSON:  I think it's 72 and 85.  Let's see.

21  John -- it's the John Lott meeting of July 2019.

22       THE COURT:  Okay.

23       MR. BATSON:  Greg Bryan, Debra Arnold, Susan Norton,

24  Clark Speese.  Lott tells them he's going to have to report

25  them to President Keel for retaliation against Kavianpour

1  violations.  And then we go to --

2          THE COURT:  Okay.

3          MR. BATSON:  So then, thereafter, he -- Speese should

4  have taken affirmative action to correct what was done to

5  Kavianpour.

6          THE COURT:  Okay.  Have you guys got that?

7          MR. THREKELD:  Yes, Your Honor, with the added

8  observation that that was all part of Kavianpour one, so we --

9          THE COURT:  You can deal with that.

10          MR. THREKELD:  Yes.

11          THE COURT:  I'm trying to get to a base set of facts

12  from which that analysis can be done.

13          MR. THREKELD:  Thank you.

14          MR. BATSON:  And 85 says -- 85 and 87 --

15          THE COURT:  Okay.

16          MR. BATSON:  -- are the paragraphs where Speese's

17  name is mentioned.

18          THE COURT:  Okay.  Does that give you what you need

19  to file either statute of limitations or res judicata for

20  Speese?

21          MR. THREKELD:  It does both, Your Honor.

22          THE COURT:  And you need to address what clearly is

23  the bright light at the end of the tunnel coming at you, which

24  is his claim that you had to do something affirmative to

25  withdraw.  I don't think I read that in here, I don't think I

1  read that in the complaint.

2          MR. THREKELD:  No.  There's not a conspiracy that's

3  alleged in the complaint as such, but we understand what

4  Your Honor is suggesting.

5          THE COURT:  Okay.  And I'd like you to put it in

6  terms of is he liable for retaliation or Rehabilitation Act --

7  is he liable for a due process violation?  Is he liable for a

8  First Amendment violation?  Or are those claims that are

9  barred by the statute of limitations or that his conduct has

10  already been decided in a way that precludes that under

11  res judicata, right?

12          Mr. Batson, you stood up for a reason?  Did you want

13  to say something?

14          MR. BATSON:  I would have -- just listening to finish

15  it up.  And I think you've got it going on.

16          THE COURT:  Okay.  And are there other bites that we

17  can take like this?

18          MR. THREKELD:  Not as to AU Medical Center and those

19  individuals that we represent, but --

20          THE COURT:  Would that be the end -- if you were to

21  win those, would that be the end of your individuals and your

22  entity as well?

23          MR. THREKELD:  Yeah.  Yes, Your Honor.

24          MR. BATSON:  They are part of the sponsoring

25  institution.  They are one half of the sponsoring institution.

1  So they really have been driving what the Board of Regents has

2  been doing in this case to begin with, so I don't think they

3  should be excluded.  And I think we probably need to add in

4  WellStar, too, so...

5           MR. THREKELD:  Your Honor --

6           THE COURT:  Do what?  No.  Hold on.  We're not

7  amending complaints right now.

8           Do you understand that?

9           MR. BATSON:  There's been a change of ownership.

10          THE COURT:  I understand that.  We're not amending

11 the complaint right now.

12          Do you understand?

13          MR. BATSON:  That's what you said.

14          THE COURT:  Okay.  If you want to amend the

15 complaint, you're going to have to file something to amend the

16 complaint.  But I'd rather deal with this issue right now.

17 And the burden to amend the complaint at this point, I've got

18 to assume, is pretty high, but we'll see.

19          Yes, sir?  Were you going to say something?

20          MR. THREKELD:  It was just an observation, that,

21 again, with respect to ACGME guidelines, the role of a

22 sponsoring institution, the role of the accrediting

23 institution, there is no private cause of action that we're

24 aware of that has been pled that exists under the ACGME, so we

25 think again it's a bit of a side show.

1          THE COURT:  You think that they've been pled to be

2    responsible just because of the acts of their individuals?  Is

3    that what you're saying?

4          MR. THREKELD:  Yes, Your Honor.

5          THE COURT:  I think that's all that's been pled,

6    hasn't it?

7          MR. BATSON:  I think we pled that AUMC separately

8    signed the agreement to comply with the grant conditions as

9    established by the ACGME, which makes sense, because there has

10   to be a teaching hospital and a teaching staff.  And that's

11   their special separate rules of a contract, a grant contract.

12         And so there had to be a hospital, the faculty didn't

13   own the hospital, ACGME runs the hospital like a temp agency

14   or an employment agency, they had the building, they don't

15   have the doctors who teach and practice, they have some

16   doctors, but they're not part of this case, so they're -- they

17   are part of this contract.

18         THE COURT:  Okay.  Well, what do you say about that?

19         MR. THREKELD:  I don't know that it has any legal

20   impact, from my perspective, just sitting here right now.  I'd

21   have to think about that some more, but...

22         THE COURT:  Okay.  All right.  Are you satisfied with

23   the path forward for your clients?

24         MR. THREKELD:  Yes, Your Honor.

25         THE COURT:  Are you satisfied, Mr. Batson, with the

```
 1  path forward for your claims against their clients?

 2          MR. BATSON:  You want my -- my true -- true opinion?

 3  No, but --

 4          THE COURT:  I wouldn't ask otherwise.  Why?

 5          MR. BATSON:  Yeah, yeah, yeah.  I'll live with it.  I

 6  mean, I don't have to agree with anything, right, but I'll

 7  live with it.  That's a way to go.

 8          THE COURT:  Wait.  I'm confused.  Where does your

 9  lack of enthusiasm for it come from?

10          MR. BATSON:  Lack of enthusiasm for what?  The plan?

11          THE COURT:  Yes, the plan that they're going to brief

12  these two issues as part of a motion to dismiss on either

13  statute of limitations or res judicata.

14          MR. BATSON:  Okay.  It's a reasonable way to go.

15          THE COURT:  Okay.  Perfect.

16          MR. BATSON:  Yeah.

17          THE COURT:  All right.  How about y'all's clients?

18  Do you have a plan like that for you?

19          MR. KOLB:  I don't think that we have a -- that we

20  can carve out one of our individual defendants in the same

21  manner as some -- as Speese and Dr. Coule, but I think that

22  you laid out the issues that you want to address pretty well

23  in your order and that we would plan to just move forward

24  addressing through supplemental briefing.

25          THE COURT:  See, but I think I'm going to get the
```

1    morass back.  I think this case -- I've listened to the way

2    that it's been said and it's been argued.  And I think that

3    this case as opposed to the last case is about the decision

4    when the reinstatement occurred, not to allow -- or I think

5    it's the process that the entity followed in the ad hoc and

6    the clinic committee and whether it violated due process or

7    whether there was something in that process that was

8    retaliatory or a violation of the First Amendment or something

9    of that nature.

10          Isn't that really what your claim is?

11          MR. BATSON:  The federal claims, yes.  Yes.  Now, I

12   do have -- I brought a copy of some of the stuff from the

13   state court and you can have that if you want to get a bigger

14   perspective of what -- what else is going on.

15          THE COURT:  I think I have a really good perspective

16   of this case.  I think it may not be as grand as your

17   perspective, but I think my perspective is pretty -- I think I

18   have a pretty good understanding of what the issues in dispute

19   are and where the points of friction lie.  I don't think I

20   need to go look at anything else further.

21          All I can offer you, if that's the way you want to

22   proceed, is a little bit more of what I said in my order, but

23   I want it to be precise.

24          And part of the reason I think it needs to be

25   precise, about what facts you think are at issue, is because I

think that this third amended complaint is pled in a way that

has no regard for what was decided in the first case and what

the new stuff is here.

And so I'd like you to more clearly engage in the

facts that you think are the new facts in this case or the

facts that support this claim. Here are the facts that we

think they're trying to allege and why we think there is a

bar.

And then let the plaintiff come back and say what

facts you're missing. That's really the only way I can think

of to do it, because I have spent an enormous amount of time

reading this complaint and marking it up. My law clerk has

spent more time reading this complaint and marking it up. And

nearly every factual allegation was part of the prior

complaint, and I say prior, I mean in Kavianpour one.

So I don't know. Do you think you can do that? Let

me say it this way. Do you think you can do that better and

more clearly than you did the last time?

MR. WEBB: Your Honor, I'm sure we could do it better

and more clearly since you've asked --

THE COURT: I guess you can't say otherwise when I've

put it that way.

MR. WEBB: No. I'm sure we could. But I think one

of the things that we've said on -- and you said it at the

very beginning of the hearing today is that, you know, it's

1   hard to tell what's being pled in a lot of different ways.

2         What I've heard today is we've got a conspiracy claim

3   that's not inside the complaint.  So when you ask us to be

4   able to come to you and say this is what we think is being --

5   we think this is being pled, it's hard for us to know.

6         THE COURT:  I know.  I agree with you.  But that's

7   what I've been trying to do.

8         MR. WEBB:  Well, the only way that I can see that

9   happening is that you -- and I don't want this, I mean, I

10  don't want this at all -- is to replead the complaint.

11        I think that there is a very good basis here for --

12  they haven't sufficiently pled a violation of the law, even

13  with new facts.  But that's -- that's something that I think

14  that we -- we would ask, if we can get into that and to the --

15  in a supplemental briefing as well.

16        Because I'm sitting here today and listening to all

17  of this and what I'm hearing is, oh, well, that's not what I

18  read in the complaint when I was getting prepared for this

19  hearing.

20        THE COURT:  Sir?

21        MR. BATSON:  It's my understanding to plead a

22  complaint, you have to plead facts that would support that

23  legal theory.  Now, if you want me to redraft the complaint

24  and be a little bit more specific about intent, purpose, that

25  kind of thing, I'll be glad to draft the complaint that way.

1          THE COURT:  I'm not sure that that's the missing

2  piece.  I think the missing piece is clarity.  I think the

3  missing piece is the failure to recognize the prior case and

4  try to build this complaint as one that exists with the prior

5  one.  I think that's really the problem.

6          I think that's where the issue lies is that you've

7  got -- it seems like the vast majority of the factual

8  allegations in this complaint were part of the prior

9  complaint, and it doesn't necessarily mean there's

10  res judicata, but that I think is the key is that it's -- and

11  so I'm not sure adding more in that regard would help.

12          MR. BATSON:  Well, that's one of the reasons I

13  mentioned the Eleventh Circuit case is that res judicata would

14  not necessarily apply until there's been a decision on the

15  appeal.  So, you know, it seems to me to be more judicious to

16  let the Eleventh Circuit decide that case and then sort out

17  what is and isn't in this case.

18          Because if we go through and argue this time around

19  about facts based on the findings in the prior case and the

20  Eleventh Circuit says, no, then we've really got a mess.

21          THE COURT:  What do y'all think about that?  Are

22  y'all involved in the Eleventh Circuit?

23          MR. WEBB:  Yes, we are.

24          THE COURT:  He's pretty sure he's going to get it

25  reversed.

1          MR. WEBB:  That's what I'm hearing.  But I don't

2    agree with that, to be honest with you.  I think that there's

3    been an adjudication of those facts that is already there on

4    the stand and I think that we can use the res judicata

5    argument at this point.

6          I mean, I just -- the one thing that I think that is

7    pretty clear, we've gone through this complaint and we've kind

8    of taken a look at what he alleges all of our individuals have

9    done, when they did it and how it, you know, went through.

10   But, I mean, just to be honest with you, if he's alleging a

11   conspiracy, I don't know why he didn't just allege a count of

12   conspiracy.  That's not in the complaint.

13         THE COURT:  No, it's not.

14         MR. WEBB:  And so, Your Honor, what I -- what I would

15   do, based upon your suggestion to us is we will put down what

16   we think his complaint is and we will address that.  But I

17   think it's very hard for us to know exactly what he's saying.

18         THE COURT:  I agree with you.  But I can't think of

19   any other way of doing it.

20         MR. WEBB:  Yeah, Your Honor, I appreciate that.  I

21   don't want to replead it.  This is the third complaint.

22         THE COURT:  Right.

23         MR. WEBB:  And, Your Honor, I don't want to be

24   pejorative or anything like that, but after three complaints,

25   it would seem to me like we would have a much clearer

1  understanding of where we're at, but we don't.  And we'll do

2  our best.

3        THE COURT:  Well, I just read it a number of times

4  and I tried to read it in the light of a good faith

5  expectation that this was meant to exist in the world where

6  the prior complaint was already alleged.

7        And all that I can come to in that, all that I can

8  come to in that is that this is about the process that was

9  done in 2020, started in December of 2019, in which apparently

10  there was some expectation that the clinical suspension would

11  be part of the review and that was not part of the review.

12  And whether that gives rise to claims independent from the

13  prior claims or that meant that previously un-asserted claims

14  accrued at that point, so be it, but I think that that's what

15  this case is actually about.  So I think that's maybe where

16  you should start.

17        MR. WEBB:  Right.  I would tend to agree.  One of the

18  things that we've talked about is that the through line

19  between, you know, the beginning or the end of the last case

20  and this case is whether or not that suspension was

21  reviewable, that goes throughout the whole second complaint in

22  our opinion as well, but we'll -- I think we can do our best

23  with it, Your Honor.

24        MR. BATSON:  Your Honor, I -- to avoid a situation

25  where we argue that plaintiffs did not plead a conspiracy, I

1   don't want -- in light of what Mr. Webb is saying, I'd like an

2   opportunity to protect ourselves and be clear on the record

3   after having gone through several motions to dismiss and to be

4   able to plead it in a way that that is addressed as opposed to

5   me not specifically saying the words conspiracy and thinking I

6   can argue plausible based on the facts that are pled.  So if

7   that is an issue, I would request that we be allowed to

8   specifically plead conspiracy, if Mr. Webb is going to turn

9   around and say they didn't plead conspiracy, we can't argue

10  conspiracy.

11          THE COURT:  Well, I'm not taking this as an oral

12  motion to amend your complaint.  I'm not going to do that.

13  You have had three chances to amend this.  And you've been

14  chewing the same operative facts going back to -- when was the

15  first complaint done?  2020?  So it's not like -- I mean, I'm

16  sorry, it's not like there is a whole lot of new ground to

17  plow here.

18          I'm going to leave that as it is.  You're the master

19  of your own case, so to speak, but I sure hope that it's a

20  high burden to amend the complaint right now.  I don't know.

21  But I hope it is, because at some point, you just have to

22  stick with what you've got.  And I can't imagine that there

23  are many facts that you could allege now that you haven't

24  known for years, literally years, but we'll see.

25          I mean, nothing has happened in this case in the

1   operative facts since August of 2022; is that right?  That's

2   by your account, the final and ultimate ending termination.

3   Right?

4           MR. BATSON:  Correct.  And we're still without a

5   hearing on the suspension.

6           THE COURT:  Okay.  Well, I'm to let it go in this

7   way.  But I do want to make sure that when you go back to this

8   again and you're talking about res judicata, I do think that

9   maybe you were a little tight on the scope of res judicata.  I

10  think that the plaintiff had a good point where they said that

11  really there is some ground, I put it in our order, about

12  facts that can be alleged even after the prior complaint.

13          Do you know what I'm talking about, that standard?

14          MR. THREKELD:  Yes, Your Honor.

15          THE COURT:  Okay.  So please try to engage more on

16  that.

17          Okay?

18          I am doing my very best to try to make sure that I

19  understand both the allegations and the defenses and so the

20  simplicity of setting it out would be greatly appreciated.

21          Okay?

22          I really am trying to avoid the situation that

23  occurred in the last one where I think there was a lot done in

24  front of the magistrate judge that really, frankly, was not

25  helpful.  I don't think I've had a situation before where I've

1  got something where by the time it got to me, it was as

2  convoluted as that was on something that I think is relatively

3  simple.

4          I don't think this is a factually complicated case.

5  I don't think this case is about the way our federal

6  government is involved in teaching residents.  I think that's

7  got nothing to do with this case.

8          I think this case is about whether or not -- putting

9  the two cases together, I think this case is about whether one

10 person in particular was mistreated in a course of events that

11 spanned, I don't know, a year.  When was the first false test?

12 Was that 2019?

13         MR. THREKELD:  July of 2018.

14         MR. KOLB:  2018.

15         THE COURT:  Okay.  And then the suspension was 2019.

16 And then the termination was right after that or at the end of

17 the year and then redone.  I mean, I just don't think there is

18 a lot here.  I really don't.

19         And I don't know that this case needs to be made a

20 lot more complicated, regardless of whether some or all of it

21 comes back from the Eleventh Circuit, it's a pretty simple

22 case, in my opinion, so at any rate.

23         All right.  Everybody understand the path forward?

24 Anything else anybody wants to say about that path forward?

25         MR. THREKELD:  Just to understand timeframe for

1  filing?

2          THE COURT:  Well, I don't feel like the plaintiff is

3  pushing to resolve it quickly.  He would like me to do nothing

4  until the Eleventh Circuit decides.

5          How much time do you want?

6          MR. THREKELD:  20 days to file our response.

7          THE COURT:  You can have 30.  Response?

8          MR. KOLB:  Judge, I'd be happy with the 45 that was

9  in the order.

10         THE COURT:  Okay.  Wait.  Why do you say response?

11         MR. THREKELD:  Just terminology.  I guess a question

12 as to whether the plaintiff will file something first or

13 whether --

14         THE COURT:  I don't think so.  I think you-all go

15 first, because I think he has now cabined it -- I was going to

16 have him file something that says what it is, but I think for

17 your two people, he has now cabined it to say there are no new

18 actions on those specific dates other than the failure to undo

19 that which they had an obligation to undo.

20         MR. THREKELD:  Okay.  So we'll file our supplemental

21 briefing within 30 days.

22         THE COURT:  Okay.  Well, you have 45.

23         MR. KOLB:  Thank you.

24         THE COURT:  You have both the same time.

25         MR. THREKELD:  All right.

```
 1              THE COURT:  Yes, sir.

 2              MR. BATSON:  Just one response, I don't know for sure

 3  what Coule did after January 2019.

 4              THE COURT:  I understand.  But you're held to -- I'm

 5  not asking in the -- you know, we're not in the world of

 6  what's actually happening, we're in the world of what's been

 7  plausibly alleged.

 8              MR. BATSON:  Okay.  Very good.

 9              THE COURT:  All right?

10              Okay.  And you don't need discovery now.  You said

11  you might put in an affidavit.

12              MR. THREKELD:  No.

13              THE COURT:  Okay.  All right.  Anything else anybody

14  wants to say for the good of moving this case forward?

15              MR. BATSON:  Are you going to --

16              THE COURT:  I do not believe that I'm going to send

17  this to a magistrate judge.

18              MR. BATSON:  Good.

19              THE COURT:  I think I'm going to keep it here.

20              Is that right?

21              He says yes.

22              MR. BATSON:  Bingo.  Are they going to do an

23  affidavit of --

24              MR. WEBB:  No.

25              THE COURT:  They are not.  They don't need to.
```

```
 1              MR. BATSON:  Gotcha.

 2              THE COURT:  All right.  Anything else?  Any clarity?

 3              MR. THREKELD:  Yes, Your Honor.

 4              THE COURT:  Okay.  Thank you very much.

 5         If something comes up that changes this, I want you

 6    to let me know, and we're going to get back together.

 7              Okay?

 8         I think that this is something that some focused

 9    attention on can help move forward.  And you have my focused

10    attention.

11              Okay?

12              Thank you.

13              MR. THREKELD:  Okay.  Thank you.

14

15              (Whereupon, the proceedings were adjourned at 11:45

16    a.m.)

17

18

19

20

21

22

23

24

25
```

REPORTERS CERTIFICATE

I, Jana B. Colter, Official Court Reporter for the United States District Court for the Northern District of Georgia, with offices at Atlanta, do hereby certify:

That I reported on the Stenograph machine the proceedings held in open court on April 28, 2025, in the matter of *Sarah Kavianpour, M.D. v. Board of Regents of the University System of Georgia, et al*, Case Number 1:22-CV-03382-MLB; that said proceedings in connection with the hearing were reduced to typewritten form by me; and that the foregoing transcript is a true and accurate record of the proceedings.

This the 2nd day of June, 2025.


_____
/s/ Jana B. Colter, FAPR, RDR, CRR, CRC
                Official Court Reporter

**MR. BATSON: [187]**
**MR. KOLB: [7]** 4/124/1523/1155/19
64/1465/865/23
**MR. THREKELD: [48]** 4/177/2320/1
20/320/1420/1621/626/1131/2235/17
39/639/1139/1439/1741/2342/242/7
42/1042/1843/245/647/647/1849/1050/9
50/1451/751/1051/1351/2152/252/18
52/2353/53/2054/454/1954/2463/14
64/1364/2565/665/1165/2065/2566/12
67/367/13
**MR. WEBB: [10]** 57/1957/2358/859/23
60/160/1460/2060/2361/1766/24
**THE COURT: [242]**

**'**

**'19 [6]** 22/739/939/1141/1742/2143/24

**-**

**-- are [1]** 51/16
**-- as [1]** 43/11
**-- be [1]** 33/24
**-- due [1]** 14/19
**-- follow [1]** 38/23
**-- for [1]** 42/3
**-- is [1]** 30/25
**-- that [1]** 28/745/21
**-- the [1]** 18/18
**-- to [1]** 29/25
**-- where [1]** 24/14

**/**

**/s [1]** 68/19

**1**

**1,000 [1]** 6/13
**11:45 [1]** 67/15
**1456 [1]** 2/21
**1500 [1]** 6/12
**16 [1]** 14/1
**18 [1]** 10/20
**181-page [1]** 6/17
**1949 [1]** 2/20
**19th [1]** 19/1
**1:22-CV-03382-MLB [2]** 2/568/11

**2**

**20 [3]** 38/1540/2465/6
**200 [1]** 7/4
**2018 [5]** 10/2039/2348/364/1364/14
**2019 [12]** 19/121/225/1436/1941/441/8
43/2350/2161/964/1264/1566/3
**2020 [8]** 14/518/1819/2021/336/943/20
61/962/15
**2022 [1]** 63/1
**2025 [4]** 2/134/168/868/15
**215-1456 [1]** 2/21
**240 [1]** 7/10
**25 [2]** 34/1034/13
**28 [3]** 2/134/168/8
**2nd [1]** 68/15

**3**

**30 [2]** 65/765/21
**300 [2]** 6/146/16
**30303 [1]** 2/21

**4**

**404 [1]** 2/21
**45 [2]** 65/865/22

**7**

**72 [1]** 50/20
**75 [1]** 2/20

**8**

**85 [3]** 50/2051/1451/14
**87 [1]** 51/14

**9**

**90 [1]** 1/4

**A**

**a.m [1]** 67/16
**able [3]** 19/2058/462/4
**about [78]**
**above [1]** 30/17
**absence [2]** 46/1549/24
**absolutely [1]** 27/6
**accepted [1]** 23/20
**accomplish [2]** 33/1133/11
**account [1]** 63/2
**accreditation [4]** 26/726/1127/427/19
**accredited [1]** 8/6
**accrediting [1]** 53/22
**accrual [2]** 37/642/12
**accrue [1]** 36/6
**accrued [1]** 61/14
**accurate [1]** 68/13
**ACGME [10]** 9/2112/2425/2026/24
28/1344/153/2153/2454/954/13
**acknowledging [1]** 11/19
**act [7]** 15/1822/1623/1229/2244/1250/5
52/6
**acting [2]** 50/950/10
**action [8]** 2/425/2527/2134/137/740/13
51/453/23
**actions [3]** 35/2336/2565/18
**active [1]** 46/22
**acts [1]** 54/2
**actually [4]** 26/2243/1961/1566/6
**ad [4]** 5/1721/722/256/5
**ad nauseam [1]** 22/2
**ADA [2]** 12/1523/1224/20
**add [1]** 53/3
**added [1]** 51/7
**addict [5]** 22/2523/323/624/1831/8
**adding [2]** 41/259/11
**additional [1]** 42/12
**address [3]** 51/2255/2260/16
**addressed [1]** 62/4
**addressing [1]** 55/24
**adequate [1]** 11/25
**adjourned [1]** 67/15
**adjudication [1]** 60/3
**adoptions [1]** 6/4
**adopts [1]** 28/13
**advance [2]** 8/1328/20
**advanced [1]** 9/6
**advice [1]** 35/9
**advising [1]** 36/17
**affidavit [1]** 36/2437/366/1166/23
**affirmative [10]** 40/1240/1341/1644/12
44/1545/1846/1146/1551/451/24
**affirmatively [3]** 45/246/446/13

**after [28]** 1/716/1416/1616/1918/131/10
34/1134/1/435/2336/1539/840/441/541/9
41/1642/2143/444/1044/1044/1145/21
46/2247/2260/2462/363/1264/1666/3
**again [14]** 5/96/213/1222/2424/1725/4
25/1231/731/1234/436/1353/2153/25
63/8
**against [5]** 36/1244/2050/1950/2555/1
**agency [2]** 54/1354/14
**agree [6]** 8/1055/658/660/260/1861/17
**agreement [1]** 54/8
**ahead [2]** 26/1826/18
**AI [1]** 1/13
**aided [1]** 2/17
**al [2]** 2/768/10
**all [65]** 4/64/245/105/115/136/47/14
11/915/2316/2217/817/1321/2023/10
23/1723/2124/2224/2426/1527/1327/17
28/328/828/928/2129/1829/2431/1632/6
33/533/1033/1934/1634/1835/1537/8
39/241/241/1543/2046/1046/1647/347/3
47/1047/1349/1449/2051/854/2554/22
55/1756/2158/1058/1660/861/761/2
64/2064/2365/1465/2566/966/1367/2
**allegation [3]** 39/1849/2057/14
**allegations [8]** 5/2236/937/549/1850/17
50/1959/863/19
**allege [6]** 22/1622/2239/757/760/11
62/23
**alleged [16]** 24/935/2236/236/1136/25
37/739/2244/944/1146/2247/1847/22
52/361/663/1266/7
**allegedly [3]** 20/2339/2541/2
**alleges [3]** 35/2536/1060/8
**alleging [3]** 12/2034/1160/10
**allow [2]** 13/2056/4
**allowed [2]** 49/1962/7
**almost [2]** 21/122/7
**alone [1]** 42/1
**along [1]** 35/19
**already [7]** 5/1322/329/1733/1352/10
60/361/6
**also [5]** 4/2024/224/1933/1438/11
**although [2]** 20/842/20
**always [1]** 10/1
**am [3]** 29/563/1863/22
**amend [6]** 53/1453/1553/1762/1262/13
62/20
**amended [7]** 20/620/720/1834/1348/16
48/1757/1
**amending [2]** 53/753/10
**Amendment [3]** 26/1352/856/8
**American [8]** 8/58/68/118/179/1725/22
**amount [2]** 6/2057/11
**analysis [4]** 20/420/2444/2451/12
**anchor [1]** 23/14
**another [4]** 4/13513/724/348/17
**answer [6]** 17/1834/2437/1537/2337/25
38/1
**any [17]** 1/910/2313/2121/2423/10
26/1334/1435/2239/839/2039/2142/12
47/2454/1960/1964/2267/2
**anybody [9]** 5/226/1819/2430/1733/5
40/749/964/2466/13
**anyone [1]** 30/2
**anything [19]** 22/725/131/1439/1940/4
41/541/941/1642/2143/1143/1345/21
49/455/656/2060/2464/2466/1367/2

**A**

apart [1] 6/24
apparent [1] 49/7
apparently [1] 61/9
appeal [2] 35/559/15
appearances [2] 2/224/8
appears [2] 50/350/4
apply [1] 59/14
appreciate [1] 60/20
appreciated [1] 63/20
APRIL [3] 2/134/168/8
are [59] 1/84/145/105/115/225/236/5
6/247/258/18/88/158/168/2415/715/17
16/1318/1621/1722/322/422/1323/21
24/1024/2527/628/531/933/1333/1436/2
37/838/340/1445/848/1650/1750/18
51/1652/852/852/1652/2254/2554/17
54/2254/2556/1956/2557/557/659/21
59/2362/662/2365/1766/1566/2266/25
area [1] 8/23
aren't [1] 31/4
argue [5] 32/1659/1861/2562/662/9
argued [2] 5/456/2
argument [2] 46/1760/5
arguments [2] 5/246/4
Arnold [2] 30/550/23
around [3] 46/2159/1862/9
as [84] 4/194/254/256/2310/312/814/23
15/715/715/1815/2016/1817/1317/19
20/1721/421/822/1022/1823/323/423/6
24/1725/1626/530/1735/136/1636/20
36/2036/2339/1740/741/1041/1942/7
43/843/1141/1246/1747/847/2350/350/4
52/352/1852/2254/855/1255/2155/21
56/356/1656/1658/1559/461/2262/4
62/1162/1864/164/265/12
ask [9] 17/1218/132/2539/244/848/5
55/458/358/14
asked [1] 35/1857/20
asking [3] 15/1616/1766/5
aspect [1] 24/1
asserted [1] 61/13
assess [2] 20/2020/22
assigned [1] 8/7
associate [1] 4/21
assume [1] 53/18
assuming [1] 50/6
assure [1] 7/19
Atchison [1] 42/14
ATLANTA [4] 2/22/214/168/6
attached [1] 1/5
attaching [1] 1/8
attack [1] 49/19
attacking [1] 28/1
attend [3] 23/1523/1523/19
attended [1] 39/23
attention [2] 67/967/10
attorney [3] 3/247/1247/25
Attorneys [1] 3/5
attributable [1] 50/5
AU [6] 4/184/2236/1636/2147/1952/18
August [8] 10/2014/518/1819/2020/13
43/1943/2063/1
August 18 [1] 10/20
August 2020 [2] 14/519/20
AUMC [2] 39/454/7
authority [1] 34/10
avoid [3] 45/1561/2463/22

**B**

aware [1] 53/24

**B**

back [29] 6/310/112/1112/2112/24
13/1513/2213/2215/715/816/416/924/9
25/1929/2531/532/732/836/437/1339/22
48/448/1156/157/962/1463/764/2167/6
background [1] 24/10
bad [4] 9/109/1210/710/9
bag [1] 26/5
bar [1] 57/8
barred [6] 22/433/1333/1437/845/12
52/9
base [1] 51/11
based [6] 6/2230/542/2059/1960/15
62/6
basically [1] 43/21
basis [4] 23/2140/2542/1258/11
bat [1] 26/24
BATSON [9] 3/24/106/2120/145/750/4
50/1852/1254/25
be [60] 1/21/34/255/45/237/77/128/18/2
12/112/212/2316/1916/1929/2132/14
33/2434/134/534/934/1535/635/935/25
36/836/936/1536/2340/1643/446/546/6
48/148/1151/1252/2052/2153/354/1
54/2554/1256/1656/2356/2458/358/24
58/2559/1560/260/1060/2361/1161/14
62/262/362/763/1263/2064/1965/8
became [1] 16/4
because [43] 7/168/2310/810/2211/3
12/1115/715/2115/2116/417/117/118/2
18/919/1824/824/1924/2325/425/19
28/2129/2131/231/631/1332/2433/734/4
36/1542/1146/246/448/2348/2550/654/2
54/956/2557/1158/1659/1862/2165/15
become [1] 8/5
becomes [1] 31/2
been [22] 10/112/1015/2520/2322/19
25/1340/1648/952/1053/1253/953/24
54/154/556/256/258/759/1460/3621/13
66/6
before [16] 2/1212/213/415/2215/25
16/1416/1516/1917/2518/522/325/5
31/1335/744/2363/25
begin [1] 53/2
beginning [2] 57/2561/19
behalf [3] 4/1850/950/10
being [7] 19/2023/423/640/658/158/4
58/5
belief [1] 36/1
believe [10] 7/1520/323/1230/1630/20
37/139/1139/1247/1266/16
below [1] 35/5
best [5] 33/1033/2561/261/2263/18
better [1] 57/1757/19
between [5] 11/215/1915/2043/1961/19
bigger [1] 56/13
biggest [1] 44/23
bill [1] 26/2
Bingo [2] 11/2466/22
bit [5] 17/1146/153/2556/2258/24
bites [1] 52/16
black [1] 49/9
blocking [2] 19/530/5
blood [1] 8/5
board [14] 2/64/74/1212/712/1712/19
13/314/237/1042/1543/2548/1053/168/9

**C**

bogus [1] 13/5
BORU [2] 24/25
both [4] 22/1551/2163/1965/24
brief [8] 36/536/1336/2142/1647/447/7
50/255/11
briefing [6] 6/1134/636/755/2458/15
65/21
briefs [1] 33/19
bright [1] 51/23
bring [2] 13/1815/8
broad [1] 6/18
brought [3] 29/429/556/12
BROWN [1] 2/12
BRYAN [4] 3/44/1213/1950/23
Bryan Webb [2] 4/1213/19
build [1] 59/4
building [1] 54/14
burden [11] 45/1346/1349/149/249/4
49/549/649/2249/2353/1762/20
burdens [1] 49/17
buy [1] 50/1

**C**

cabined [2] 65/1565/17
call [1] 17/16
called [1] 8/15
came [1] 30/4
can [45] 4/257/1917/2419/1024/10
25/1826/2026/2026/2032/1633/2133/23
33/2537/637/1540/1841/542/645/11
46/1747/247/347/347/1150/250/351/9
51/1252/1755/2056/1356/2157/1057/16
57/1758/858/1460/461/761/761/2262/6
63/1265/767/9
can't [15] 5/238/2515/515/719/819/18
25/144/445/1448/1048/1457/2160/18
62/962/22
candidly [1] 37/3
cannot [4] 12/332/2533/2234/5
Canyon [2] 6/2411/2
care [1] 39/4
carve [1] 55/20
case [94]
cases [4] 5/2415/1915/2064/9
cause [2] 27/2053/23
caveat [1] 11/13
CCC [11] 12/1012/2320/1921/421/5
22/2423/123/1423/1931/336/10
center [7] 4/184/2236/1636/2147/20
50/1052/18
certain [2] 12/234/12
CERTIFICATE [1] 68/1
certificates [1] 25/22
certification [1] 26/21
Certified [1] 1/14
certify [1] 68/6
challenged [1] 31/13
challenging [1] 36/3
chance [2] 17/524/3
chances [1] 62/13
change [1] 53/9
changes [1] 67/5
characterization [1] 46/14
charge [1] 41/1
chewing [1] 62/14
choose [2] 18/818/8
churning [1] 33/15
Circuit [15] 32/733/1934/635/135/11

**Circuit...** [10] 35/1335/1638/342/14
59/1359/1659/2059/2264/2165/4
**circumstance** [1] 35/4
**citations** [3] 9/179/2540/24
**cite** [1] 1/5
**citizen** [1] 36/20
**citizens** [1] 9/3
**CIVIL** [1] 2/4
**claim** [19] 12/1322/1623/1123/2424/5
24/724/1524/1626/1226/1336/436/637/1
41/843/1851/2456/1057/658/2
**claiming** [1] 29/21
**claims** [12] 22/326/1434/1437/842/3
42/552/855/156/1161/1261/1361/13
**clarify** [1] 45/25
**clarity** [2] 59/267/2
**Clark** [1] 50/24
**clear** [7] 14/436/836/1643/846/1660/7
62/2
**clearer** [1] 60/25
**clearly** [5] 17/2151/2257/457/1857/20
**clerk** [1] 57/12
**client** [6] 11/1225/2427/2035/2036/21
39/1
**clients** [4] 20/854/2355/155/17
**clinic** [3] 5/825/1956/6
**clinical** [4] 5/1729/339/961/10
**CM** [2] 1/21/3
**CM/ECF** [2] 1/21/3
**collateral** [1] 20/25
**colleague** [1] 4/20
**College** [4] 8/118/179/1825/23
**COLTER** [3] 2/1968/468/19
**come** [9] 6/326/2428/442/455/957/9
58/461/761/8
**comes** [6] 13/113/118/1028/864/2167/5
**coming** [1] 51/23
**commit** [1] 28/24
**committee** [3] 5/175/1856/6
**complained** [1] 20/18
**complaining** [2] 30/830/9
**complains** [1] 40/1
**complaint** [53] 20/620/820/1822/1
22/1133/734/1335/2138/1540/2543/17
44/945/1245/1547/247/1947/2247/24
48/1648/1749/349/850/450/1752/152/3
53/1153/1553/1653/1757/157/1257/13
57/1558/358/1058/1858/2258/2358/25
59/459/859/960/760/1260/1660/2161/6
61/2162/1262/1562/2063/12
**complaints** [3] 22/1953/760/24
**complete** [2] 19/919/10
**completed** [1] 8/18
**completely** [1] 39/5
**compliance** [5] 47/1347/1948/148/2
50/14
**complicated** [7] 5/115/215/246/196/20
64/464/20
**complied** [1] 5/3
**comply** [2] 5/454/8
**computer** [1] 2/17
**computer-aided** [1] 2/17
**conceded** [1] 50/5
**concerned** [1] 31/25
**condition** [4] 9/926/926/1940/15
**conditions** [12] 8/108/209/179/2523/5
25/2025/2126/428/930/1841/1454/8

**conduct** [4] 29/536/1939/852/9
**confronts** [1] 48/2
**confused** [2] 48/2255/8
**connection** [1] 68/11
**consider** [1] 35/6
**considered** [1] 8/1
**conspiracy** [20] 40/640/840/1040/14
44/1644/2545/245/2446/1246/1649/24
52/258/260/1160/1261/2562/562/862/9
62/10
**consumer** [1] 22/11
**contention** [2] 10/142/20
**context** [2] 12/1712/18
**continue** [4] 11/723/224/2044/16
**continued** [3] 12/432/1742/10
**continuing** [1] 46/15
**contract** [11] 10/1527/828/428/1228/13
28/1730/748/654/1154/1154/17
**contractually** [1] 45/1
**contradict** [1] 50/1
**conversation** [2] 5/1648/3
**convoluted** [1] 64/2
**cooperated** [1] 32/1
**copies** [1] 33/19
**copy** [1] 56/12
**correct** [11] 16/1118/2128/2541/10
41/1141/1241/1341/1345/2251/463/4
**corrected** [1] 15/21
**could** [13] 10/1110/1213/1015/2516/19
16/1917/1730/1832/1444/2057/1957/23
62/23
**couldn't** [1] 30/16
**Coule** [32] 29/229/1829/1930/430/4
30/1731/2031/2131/2231/2331/2432/1
32/135/2135/2336/1636/1836/2437/14
39/439/740/340/1141/1542/2043/13
46/1346/2547/447/2355/2166/3
**Coule's** [2] 31/740/25
**counsel** [7] 4/84/2135/2036/1636/20
39/1847/20
**count** [21] 6/56/521/1321/1421/1521/18
21/1821/1921/2122/1522/1622/2123/1
23/2321/1023/1124/524/726/1534/11
60/11
**county** [2] 4/110/23
**couple** [2] 24/424/4
**course** [2] 34/164/10
**court** [15] 1/31/71/91/121/142/12/194/2
22/335/656/1368/468/568/868/20
**Courthouse** [1] 2/20
**courtroom** [1] 4/21
**COWARD** [2] 3/54/20
**CRC** [2] 2/1968/19
**create** [1] 30/3
**created** [1] 40/8
**creative** [1] 35/18
**CRR** [2] 2/1968/19
**culture** [1] 36/18
**current** [1] 50/18
**cut** [1] 13/10
**CV** [2] 2/568/11

**D**

**damages** [1] 13/11
**date** [11] 14/1414/2315/1820/2020/22
34/1234/1234/1437/638/1645/21
**dates** [2] 41/265/18
**day** [10] 8/158/158/169/1113/1923/8

31/1031/1040/1568/15
**days** [3] 7/485/665/21
**de** [4] 16/318/2519/825/8
**de facto** [4] 16/318/2519/825/8
**deal** [3] 39/2551/953/16
**Debra** [1] 50/23
**Debra Arnold** [1] 50/23
**December** [5] 14/121/222/724/2161/9
**decertify** [2] 9/2126/24
**decide** [3] 33/2333/2559/16
**decided** [5] 23/1930/1133/1352/1057/2
**decides** [1] 65/4
**decision** [26] 5/1814/114/614/1515/22
21/322/2329/1729/1929/1931/331/3
32/1335/1339/839/1929/2140/441/441/8
41/1642/442/1146/2356/359/14
**declined** [1] 23/15
**defendant** [1] 49/6
**defendant's** [1] 6/15
**defendants** [2] 2/83/34/1155/20
**defense** [7] 7/2219/2419/2526/1041/21
45/1149/7
**defenses** [1] 63/19
**define** [4] 15/317/2419/1819/20
**defined** [1] 17/19
**defining** [1] 16/18
**delayed** [1] 15/23
**demand** [1] 3/17
**department** [6] 8/149/413/2430/230/1
31/9
**depends** [1] 14/25
**deposition** [1] 37/2
**deprive** [1] 38/18
**describes** [1] 40/24
**despite** [2] 23/1623/16
**determination** [1] 15/24
**determining** [1] 17/24
**deviations** [1] 15/24
**did** [37] 5/126/66/621/724/125/1028/21
29/2230/830/2236/636/639/1639/1941/3
41/841/1642/2243/1243/1944/1044/11
44/2045/1845/2146/1347/2248/1249/25
50/850/1150/1752/1257/1860/961/25
66/3
**didn't** [21] 5/35/137/210/1912/912/24
13/2116/118/821/2428/2529/2030/10
42/1142/2043/1144/349/2554/1260/11
62/9
**different** [3] 5/1012/1958/1
**difficult** [2] 35/2239/21
**directly** [1] 17/1417/18
**director** [2] 10/523/17
**disagree** [1] 49/9
**discern** [1] 35/22
**discovery** [5] 37/443/1844/1945/15
66/10
**discrete** [2] 42/1747/4
**discussing** [1] 48/18
**discussion** [3] 6/2325/831/14
**discussions** [1] 47/25
**dismiss** [5] 49/649/1649/1755/1262/3
**dispute** [2] 11/1956/18
**distinct** [1] 24/8
**District** [5] 1/142/12/168/568/5
**divide** [2] 15/1915/20
**DIVISION** [1] 2/2
**do** [110]
**docket** [1] 1/6

## D

**doctor [2]** 11/2527/1
**doctors [5]** 8/48/59/228/2354/1554/16
**document [1]** 1/9
**does [15]** 6/1825/2426/326/1033/5 33/1237/1839/442/742/947/549/951/18 51/2155/8
**doesn't [3]** 25/1237/1159/9
**doing [4]** 24/2153/260/1963/18
**DOJ [1]** 26/22
**don't [65]** 6/86/810/1610/1712/1813/18 13/2013/2517/919/2225/426/1227/22 29/531/1432/533/834/1637/337/437/10 37/2238/538/2042/742/942/1042/12 43/2044/344/1446/2448/1848/2549/2 51/2551/2553/254/1454/1955/655/19 56/1957/1658/958/1060/160/1160/21 60/2361/162/162/2063/2564/464/564/11 64/1764/1864/1965/265/1466/266/10 66/25
**done [8]** 43/1844/151/451/1260/961/9 62/1563/23
**down [5]** 14/535/535/740/1960/15
**Dr [1]** 31/24
**Dr. [19]** 9/1610/1320/2223/2031/22 35/2135/2336/1636/1836/1439/25 40/140/1146/1346/2547/447/2355/21
**Dr. Coule [13]** 31/2235/2135/2336/16 36/1836/2437/1440/1146/1346/2547/4 47/2355/21
**Dr. Kavianpour [5]** 9/1610/1320/22 39/2540/1
**Dr. Macomson [1]** 23/20
**draft [1]** 58/25
**drafted [1]** 22/19
**Drive [1]** 2/20
**driving [1]** 53/1
**drown [1]** 22/11
**drug [13]** 5/310/310/910/2122/2523/3 23/624/1730/630/1330/2131/331/6
**drug-testing [1]** 5/3
**due [13]** 14/614/714/714/1914/2115/10 15/1316/1016/1325/138/1852/756/6
**DUI [1]** 5/7
**during [1]** 30/5
**duty [10]** 29/141/1341/1842/2143/17 45/145/145/245/2245/23

## E

**each [4]** 8/168/1634/1142/3
**earlier [2]** 20/1420/16
**early [2]** 36/936/19
**ECF [2]** 1/21/3
**education [5]** 8/118/179/1810/525/23
**effect [1]** 37/3
**efficiently [1]** 4/25
**eight [1]** 18/12
**either [4]** 5/1221/851/1955/12
**Eleventh [15]** 32/733/1934/635/135/11 35/1335/1638/342/1459/1359/1659/20 59/2264/2165/4
**ELLIOTT [2]** 3/54/20
**Elliott Coward [1]** 4/20
**else [11]** 15/2443/1143/1243/1444/1 50/1156/1456/2064/2466/1367/2
**emails [1]** 10/16
**employment [2]** 7/1554/14
**end [9]** 6/86/912/639/1351/2352/20

52/2161/1964/16
**ending [1]** 63/2
**engage [2]** 57/463/15
**enormous [1]** 57/11
**enough [5]** 24/1336/741/2442/1643/1
**enter [1]** 8/7
**enthusiasm [2]** 55/955/10
**entitled [3]** 12/312/2228/10
**entity [2]** 52/2256/5
**entry [1]** 6/12
**enunciation [1]** 22/12
**equal [1]** 38/19
**especially [1]** 8/23
**essentially [1]** 22/25
**established [1]** 54/9
**estoppel [1]** 20/25
**et [2]** 2/768/10
**evaluated [1]** 8/19
**evaluating [1]** 48/15
**even [8]** 31/835/836/2041/1858/12 63/12
**events [1]** 64/10
**every [5]** 9/1117/1122/928/2357/14
**Everybody [1]** 64/23
**everything [5]** 6/1111/515/2422/1136/12
**evidence [7]** 45/1846/1146/1446/15 48/1249/2549/25
**exact [1]** 17/16
**exactly [2]** 20/360/17
**exceed [1]** 6/11
**exceptions [1]** 27/1
**exclude [1]** 6/15
**excluded [1]** 53/3
**exclusively [2]** 21/230/4
**exhibits [1]** 6/12
**exist [1]** 61/5
**exists [2]** 53/2459/4
**expect [3]** 17/1719/2219/22
**expectation [6]** 12/427/2228/1928/20 61/561/10
**expectations [1]** 21/8
**experts [1]** 6/15
**explain [1]** 17/5
**explains [1]** 28/17
**extent [2]** 23/1327/19
**extra [1]** 26/3

## F

**face [3]** 45/1245/1549/7
**fact [9]** 24/1825/328/430/930/1743/5 43/2144/1046/24
**facto [4]** 16/318/2519/825/8
**facts [5]** 5/55/55/105/115/236/56/23 11/221/1721/2424/924/1136/238/1543/4 51/1156/2557/557/557/657/657/1058/13 58/2259/1960/362/662/1462/2363/1 63/12
**factual [3]** 6/1157/1459/7
**factually [3]** 6/196/1964/4
**faculty [3]** 30/1530/1654/12
**failed [4]** 41/541/1241/1341/17
**failure [3]** 46/2359/365/18
**Fair [1]** 24/13
**faith [1]** 61/4
**fall [1]** 48/13
**false [1]** 64/11
**FAPR [2]** 2/1968/19
**February [2]** 19/119/1

**federal [13]** 7/177/248/28/98/219/16 23/423/825/1927/2430/1856/1164/5
**feedback [1]** 8/22
**feel [3]** 26/1732/2165/2
**file [10]** 2/538/1438/1740/2351/1953/15 65/665/1265/1665/20
**filed [8]** 1/21/71/913/213/515/2218/5 18/6
**filing [2]** 23/1365/1
**final [16]** 6/1114/114/514/1515/2115/21 15/2418/918/918/2220/1020/2020/22 24/2425/263/2
**find [2]** 44/2045/14
**findings [1]** 59/19
**fine [1]** 45/4
**finish [2]** 43/1652/14
**first [31]** 5/1410/410/711/1415/10 16/1018/518/718/1019/419/519/919/11 19/2124/824/2026/1330/733/1637/13 37/1640/441/1752/856/857/262/1564/11 65/1265/15
**First Amendment [3]** 26/1352/856/8
**five [3]** 21/1821/2131/10
**fixed [1]** 33/8
**fleshed [1]** 23/17
**flows [1]** 36/12
**focused [2]** 67/867/9
**follow [8]** 6/714/414/414/414/424/25 26/438/23
**followed [3]** 12/214/1156/5
**following [3]** 1/114/148/4
**foregoing [1]** 68/12
**form [1]** 68/12
**formal [1]** 18/6
**forward [12]** 13/919/133/1138/842/4 54/2355/155/2364/2364/2466/1467/9
**four [1]** 8/4
**frankly [2]** 48/2363/24
**friction [1]** 56/19
**front [2]** 32/663/24
**full [2]** 1/813/22
**Fulton [1]** 4/1
**further [3]** 28/1944/1556/20

## G

**gave [2]** 13/436/23
**gear [1]** 12/5
**general [4]** 4/217/1535/2047/20
**generally [1]** 37/2
**GEORGIA [8]** 2/12/62/214/14/710/10 68/668/10
**get [31]** 8/78/98/139/29/69/219/2210/3 11/1712/613/1815/615/2319/1024/14 25/226/226/332/232/532/732/832/24 35/744/1951/1155/2556/1358/1459/24 67/6
**gets [2]** 13/224/23
**getting [4]** 12/1521/1145/358/18
**give [16]** 8/219/1310/711/1213/2117/8 17/1119/624/324/425/2428/2134/10 36/2547/551/18
**given [2]** 5/1537/5
**gives [2]** 42/461/12
**giving [3]** 22/934/1337/3
**glad [3]** 29/429/558/25
**glean [3]** 22/234/639/22
**go [32]** 12/515/719/821/721/2124/424/9 24/2225/1225/1826/1726/1829/429/25

**go... [18]** 30/1131/634/1534/1635/138/8 43/2243/2548/1148/1651/155/755/14 56/2059/1863/663/765/14
**goal [1]** 4/24
**goes [2]** 35/761/21
**going [36]** 11/1213/1413/1413/1513/17 13/1916/917/1117/1224/325/334/1036/8 38/144/845/448/1648/1950/2452/15 53/1553/1955/1155/2556/1459/2462/8 62/1262/1462/1865/1566/1566/1666/19 66/2267/6
**gone [3]** 10/1260/762/3
**good [14]** 4/1712/1013/530/1537/11 37/1856/1556/1858/1161/463/1066/8 66/1466/18
**got [23]** 6/311/2512/2413/523/2329/14 30/1144/744/848/449/1649/2349/2351/6 52/1553/1758/259/759/2062/2264/164/1 64/7
**Gotcha [2]** 11/2267/1
**gotten [2]** 11/611/20
**government [4]** 8/2526/2127/2464/6
**governs [1]** 28/9
**graduate [6]** 8/68/118/179/1810/525/23
**grand [4]** 6/2411/227/2556/16
**grant [21]** 7/187/248/28/98/219/99/17 9/2523/423/525/2025/2126/226/426/9 26/1930/1840/1541/1454/854/11
**greatly [1]** 63/20
**Greg [1]** 50/23
**Greg Bryan [1]** 50/23
**ground [4]** 22/236/2562/1663/11
**guess [2]** 57/2165/11
**guidelines [1]** 53/21
**guy [1]** 50/6
**guys [1]** 51/6

**H**

**had [32]** 5/77/410/210/710/1212/612/8 15/2118/720/820/2321/1222/430/21 41/1241/1842/2144/1545/145/145/22 45/2346/1046/1146/2451/2454/1254/14 62/1363/1063/2565/19
**half [1]** 52/25
**handle [1]** 42/6
**happen [1]** 26/20
**happened [8]** 11/1217/2518/121/2 33/1634/1135/2362/25
**happening [2]** 58/966/6
**happy [1]** 65/8
**harassing [1]** 27/2
**hard [8]** 5/226/722/622/822/1358/158/5 60/17
**has [19]** 1/710/113/328/1931/1433/9 40/1649/650/552/953/153/2454/954/19 57/257/1262/2565/1565/17
**hasn't [1]** 54/6
**have [100]**
**haven't [4]** 11/2029/1758/1262/23
**having [3]** 23/1631/1262/3
**he [58]** 10/619/2419/2523/2036/136/24 37/1939/1639/1739/1939/2039/2341/2 41/341/841/1241/1741/1842/1142/20 42/2142/2243/543/1143/1243/2143/24 43/2544/1044/1144/1444/2445/145/15 45/1845/2145/2245/2345/2346/1347/12 47/1947/2047/2248/949/250/950/1151/3

52/652/752/760/860/1165/365/1565/17 66/21
**he's [9]** 43/1346/1547/1347/1550/24 59/2459/2460/1060/17
**Health [1]** 4/19
**hear [1]** 35/3
**heard [3]** 7/77/1258/2
**hearing [32]** 4/2412/812/912/1012/22 12/2313/413/1213/1413/1615/2119/7 20/920/1922/2423/123/1423/1523/15 24/2124/2425/232/1336/1041/744/2 57/2558/1758/1960/163/568/12
**hearings [2]** 13/1939/20
**held [2]** 66/468/8
**help [3]** 44/1559/1167/9
**helpful [2]** 36/2463/25
**hence [2]** 9/1725/21
**her [58]** 5/125/1510/110/710/1110/11 10/1210/2010/2112/312/1012/1112/11 12/2416/419/619/619/921/823/323/3 23/623/1723/2224/1724/1724/2025/4 25/1125/1825/1825/1826/428/328/21 28/2128/2328/2429/230/330/330/530/8 30/1330/1430/1430/1531/531/931/936/1 36/1239/939/2140/640/1441/448/4
**here [26]** 4/64/206/237/1612/2013/1 13/122/823/2427/1927/2027/2529/431/6 34/134/938/351/2554/2057/357/658/11 58/1662/1764/1866/19
**here's [4]** 9/2022/2340/1745/7
**hereby [1]** 68/6
**hey [1]** 48/12
**high [2]** 53/1862/20
**highly [2]** 9/328/17
**him [6]** 36/1939/2242/444/2048/165/16
**hired [3]** 10/1110/1148/1
**his [12]** 36/2137/139/839/1342/1146/22 46/2347/1150/751/2452/960/16
**hoc [3]** 5/1721/756/5
**hold [16]** 29/629/929/929/1129/2242/24 43/743/1043/1644/544/745/2047/1748/5 48/1453/6
**hone [4]** 36/736/1437/637/7
**honest [2]** 60/260/10
**Honor [33]** 4/177/2320/2126/1126/16 35/1736/536/1539/639/1440/1941/23 42/243/245/647/647/1849/1051/751/21 52/452/2353/554/454/2457/1960/14 60/2060/2361/2361/2463/1467/3
**HONORABLE [1]** 2/12
**hope [3]** 16/1362/1962/21
**hospital [10]** 8/38/1213/2216/525/12 35/2054/1054/1254/1354/13
**hour [1]** 13/20
**house [2]** 39/1747/12
**how [18]** 7/247/2511/426/1727/2428/5 29/533/433/633/1734/635/136/337/9 39/2555/1760/965/5
**however [1]** 1/8
**HS13 [2]** 14/124/25
**huffing [1]** 17/9
**hundreds [1]** 5/21
**hypertechnical [1]** 46/6

**I**

**I'd [6]** 52/553/1654/2057/462/165/8
**I'll [10]** 6/210/1618/132/833/1834/12 34/1555/555/658/25

**I'm [57]** 4/184/195/47/37/511/1215/6 15/1618/816/316/1917/1017/1117/12 22/922/924/325/327/1429/429/2332/3 32/2434/1034/1338/1341/141/744/846/2 46/546/646/2048/2048/2049/149/2050/6 51/1155/855/2557/1957/2358/1658/17 59/159/1160/162/1162/1262/1562/18 63/663/1366/466/1666/19
**I've [12]** 5/56/349/449/549/1453/1756/1 57/2158/258/763/2563/25
**idea [7]** 13/727/2533/537/1237/1840/18 49/23
**ignore [1]** 25/3
**imagine [1]** 62/22
**immediate [1]** 8/22
**immediately [1]** 29/1
**impact [3]** 41/541/954/20
**improperly [1]** 33/7
**Inc [1]** 4/19
**incident [1]** 43/21
**include [1]** 5/17
**includes [1]** 6/13
**including [2]** 5/744/16
**indeed [1]** 8/10
**independent [1]** 61/12
**individual [1]** 55/20
**individuals [4]** 52/1952/2154/260/8
**influence [1]** 44/15
**information [2]** 30/236/1
**initial [3]** 6/2344/1047/23
**inside [1]** 58/3
**institution [7]** 8/28/310/2352/2552/25 53/2253/23
**institutions [1]** 8/8
**intent [1]** 58/24
**intercede [1]** 42/11
**interest [1]** 8/24
**interfere [1]** 10/17
**interfering [1]** 30/10
**interject [1]** 10/24
**interrupt [2]** 15/632/2433/1
**interrupting [3]** 32/2032/2134/4
**interviewed [1]** 48/10
**investigated [1]** 13/3
**invited [1]** 23/14
**involved [14]** 9/219/2212/2222/827/24 36/2539/839/2039/2440/340/748/759/22 64/6
**involvement [2]** 39/1346/22
**ironic [1]** 10/22
**irony [1]** 9/20
**is [240]**
**isn't [5]** 8/1226/726/856/1059/17
**issue [17]** 5/2310/310/1826/726/1231/4 36/636/1441/142/1747/347/748/1553/16 56/2559/662/7
**issued [1]** 10/19
**issues [6]** 23/1933/1236/2255/1255/22 56/18
**it [123]**
**it's [52]** 8/139/19/39/310/211/1016/23 20/2122/824/1925/826/126/126/226/5 26/526/926/1127/827/1028/1628/1631/7 33/835/135/2135/2236/237/438/738/8 38/1239/2144/345/1250/2050/2153/25 55/1456/256/256/557/2558/2558/2159/10 60/1360/1762/1562/1662/1964/21
**its [4]** 10/823/1926/2135/20

## J

JANA [3] 2/1968/468/19
January [6] 20/1723/1424/2231/443/19 66/3
January 2019 [1] 66/3
Jason [1] 4/22
jeopardize [1] 28/16
job [2] 9/134/17
JOHN [7] 3/24/1047/2548/150/1350/21 50/21
John Batson [1] 4/10
John Lott [3] 47/2548/150/21
joined [4] 4/194/20
judge [3] 63/2465/866/17
judge's [1] 6/17
judges [1] 5/25
judgment [1] 6/14
judicata [13] 20/2522/533/1441/25 42/1951/1952/1155/1359/1059/1360/4 63/863/9
judicious [2] 35/659/15
July [3] 48/350/2164/13
jumps [1] 35/7
June [1] 68/15
just [33] 8/2510/1511/511/1012/23 22/1522/1825/1525/1626/726/2531/13 32/2537/1537/1943/744/847/2150/16 52/1453/2054/254/2055/2360/660/10 60/1160/362/2164/1764/2565/1166/2

## K

K1 [12] 12/612/1712/2513/113/514/6 14/1615/1015/2221/2523/1723/18
K2 [4] 14/714/2115/1315/23
KAVIANPOUR [23] 2/34/69/1610/13 20/520/520/820/1820/2220/2524/826/14 29/1434/1335/2137/139/2540/150/25 51/551/857/1568/9
Keel [1] 50/25
keep [4] 12/1932/2536/166/19
key [1] 59/10
kind [4] 12/2222/2558/2560/7
knew [2] 20/2236/11
know [40] 6/413/217/1819/2219/24 19/2524/1827/2229/532/2132/2434/7 35/1837/1043/2043/2044/1446/946/24 47/1048/1848/2550/554/1957/1657/25 58/558/659/1560/960/1160/1761/19 62/2063/1364/1164/1966/266/567/6
known [4] 4/1920/2336/1162/24
KOLB [4] 3/34/124/1523/9

## L

lack [2] 55/955/10
laid [3] 6/2323/2155/22
language [1] 45/25
larding [1] 46/8
last [10] 7/1018/134/1239/1548/950/5 56/357/1861/1963/23
law [17] 3/23/55/236/1910/410/710/9 10/2312/1925/1636/836/1542/846/18 49/957/1258/12
lawful [1] 30/6
lawsuit [4] 13/113/213/423/13
lawyer [2] 22/1850/7
lawyers [2] 13/2017/13
lead [1] 38/23
learned [1] 28/24

learning [1] 28/24
least [2] 22/7487/3
leave [2] 24/162/18
led [2] 20/531/13
legal [2] 54/1958/23
legality [1] 25/17
legitimate [1] 23/24
less [1] 40/24
let [15] 7/815/716/421/2024/625/1839/2 45/2548/550/1657/957/1659/1663/667/6
let's [7] 10/1412/1913/837/1347/21 47/2250/20
letter [18] 5/1513/2514/518/1518/17 18/1918/1919/2029/729/1030/430/4 30/1230/1431/431/732/249/9
Letters [1] 5/11
letting [4] 6/128/2431/431/9
level [8] 8/139/612/112/328/2030/2
liabilities [1] 42/13
liability [3] 40/2542/542/11
liable [3] 52/652/752/7
license [1] 19/10
lie [1] 56/19
lies [1] 59/6
light [3] 51/2361/462/1
like [33] 6/106/249/110/1511/712/23 13/813/817/1530/830/1030/1333/1636/4 36/1336/1436/2137/1137/1847/752/5 52/1754/1355/1857/459/760/2460/25 62/1562/1562/1665/265/3
limitations [11] 29/1633/1337/941/25 42/1945/1045/1349/751/1952/955/13
limited [1] 49/18
line [2] 1/661/18
list [1] 13/17
Listen [4] 15/516/716/746/5
listened [1] 56/1
listening [2] 52/1458/16
literally [1] 62/24
litigate [1] 41/25
litigation [1] 33/15
little [5] 45/2548/2256/2258/2463/9
live [2] 9/1238/838/955/555/7
long [1] 15/7
look [8] 5/186/530/1340/547/148/12 56/2060/8
looked [1] 22/1
looking [2] 22/1926/22
looks [1] 9/1
lose [2] 26/2026/20
lost [1] 19/15
lot [8] 5/56/733/858/162/1663/2364/18 64/20
Lott [6] 47/2548/148/250/1350/2150/24
Loudermill [3] 12/812/912/22
love [1] 25/7

## M

M.D [2] 2/368/9
machine [1] 68/7
Macomson [1] 23/20
made [5] 32/1239/940/141/464/19
magistrate [4] 5/256/1663/2466/17
main [1] 44/22
maintain [1] 36/18
majority [1] 59/7
make [16] 10/1711/1822/927/128/15 30/1333/1235/835/1338/346/1746/20

47/1550/1663/763/18
makes [3] 8/2216/1454/9
making [1] 6/1
malpractice [3] 28/2529/2130/1
manner [2] 28/1555/21
many [3] 9/79/862/23
March [5] 39/1141/441/1742/2143/4
marking [1] 57/1257/13
master [1] 62/18
match [1] 8/7
matter [8] 10/425/1627/2030/1837/4 42/846/1868/9
matters [2] 27/1927/24
may [22] 1/21/54/87/37/37/57/77/12 10/2417/317/519/1526/1634/2036/1 40/1943/443/1648/948/1148/1156/16 63/9
maybe [6] 25/627/2127/2144/361/15 63/9
MCG [1] 4/19
McKinney [1] 25/1
me [59] 6/16/16/77/815/516/716/716/14 19/1521/1321/1721/2022/622/822/15 22/1822/2124/424/524/624/1532/732/20 32/2233/133/1033/1734/434/534/734/9 34/1934/2534/2535/135/1537/2138/24 39/239/2141/1043/843/1245/1745/25 46/548/550/350/450/1657/1758/2359/15 60/2562/564/165/367/668/12
mean [23] 16/1416/1417/217/419/18 20/320/1921/1821/1923/2325/438/20 39/1840/1355/657/1558/959/960/660/10 62/1562/2564/17
meaning [1] 46/9
means [4] 8/1219/2419/2520/1
meant [2] 61/561/13
mechanical [1] 2/17
med [1] 9/21
medical [17] 4/184/227/178/68/118/14 8/179/1810/513/2325/2330/336/1636/21 47/1950/1052/18
meet [1] 21/8
meeting [4] 39/2340/246/2550/21
meetings [1] 23/16
Melcher [2] 13/1950/10
memo [4] 10/610/610/2010/20
mentioned [2] 51/1759/13
mess [1] 59/20
met [1] 28/21
MICHAEL [1] 2/12
mid [1] 39/9
mid-'19 [1] 39/9
middle [2] 20/1548/15
might [7] 30/1335/635/735/844/1545/14 66/11
milestones [4] 8/158/189/828/21
mind [4] 10/1310/1420/738/4
mine [2] 34/934/15
minimize [1] 47/11
minimum [1] 20/19
minute [2] 18/2547/1
minutes [1] 24/5
misled [2] 30/1630/20
missing [1] 57/1059/159/259/3
mistreated [1] 64/10
mixed [1] 26/5
MLB [2] 2/568/11
moment [2] 10/2425/11
money [2] 26/328/8

**M**

month [1] 10/14
monthly [1] 10/21
months [2] 9/1431/10
morass [1] 56/1
more [13] 6/1344/2054/2156/2257/4
57/1357/1857/2058/2459/1159/1563/15
64/20
morning [1] 4/17
morphed [1] 16/3
most [1] 35/6
motion [4] 49/549/1755/1262/12
motions [2] 6/1462/3
move [6] 12/333/1035/1948/2055/23
67/9
moved [1] 44/2
moving [3] 32/2549/1666/14
Mr. [18] 6/2120/123/923/923/935/20
36/1540/1145/747/747/950/450/1050/18
52/1254/2562/162/8
Mr. Batson [7] 6/2120/145/750/450/18
52/1254/25
Mr. Kolb [1] 23/9
Mr. Melcher [1] 50/10
Mr. Speese [5] 35/2036/1540/1147/7
47/9
Mr. Threlkeld [1] 23/9
Mr. Webb [3] 23/962/162/8
much [5] 7/1132/660/2565/567/4
multiple [20] 5/245/257/114/1016/6
16/2518/1120/1221/1624/1227/1129/8
31/1732/1934/2338/638/2143/646/3
48/21
must [1] 41/1
mutual [3] 12/428/1928/20
my [31] 4/204/245/2010/1711/220/7
20/822/1025/834/1634/2435/935/20
37/1538/2338/2538/2540/540/546/14
48/554/2055/255/256/1756/2257/12
58/2163/1864/2267/9
myself [1] 34/6

**N**

name [2] 50/751/17
nation [1] 11/4
nation's [3] 7/167/2528/5
national [1] 8/25
nature [1] 56/9
nauseam [1] 22/2
nearly [1] 57/14
necessarily [2] 59/959/14
necessary [1] 37/5
need [17] 10/112/1815/617/817/918/8
25/628/2232/543/2546/951/1851/2253/3
56/2066/1066/25
needless [1] 33/15
needs [3] 10/2256/2464/19
negative [3] 5/210/810/12
neither [1] 10/8
neurosurgery [1] 9/7
never [3] 15/2115/2218/7
new [11] 22/222/229/1634/1438/14
42/2157/357/558/1362/1665/17
next [5] 8/139/612/112/332/13
no [62] 1/132/57/67/67/89/1510/212/18
13/514/1614/1614/1614/1615/415/515/5
16/717/617/618/918/2419/526/926/17
27/527/627/827/827/929/2430/230/15

**O**

objections [2] 6/167/10
obligation [3] 12/712/865/19
observation [2] 51/853/20
occur [2] 13/2225/10
occurred [6] 21/2521/2529/1634/14
56/463/23
occurs [1] 25/11
off [3] 11/113/1038/1
offer [3] 13/913/1056/21
offhand [1] 46/25
officer [2] 47/1950/15
offices [1] 68/6
official [8] 1/11/21/31/71/142/1968/4
68/20
oh [6] 5/2512/1831/446/248/1258/17
okay [88]
old [1] 29/25
once [3] 10/1420/722/24
one [52] 4/146/58/239/239/2313/615/23
15/2416/1217/1617/1718/119/2220/5
20/620/820/1821/1321/1421/1521/18
21/1921/2321/2322/1522/1722/2123/1
23/2231/1023/1124/524/726/2529/1433/9
34/1335/2543/2151/852/2555/2057/15
57/2359/459/559/1260/661/1763/2364/9
66/2
ones [1] 28/14
ongoing [4] 40/640/1444/2545/24
only [14] 1/21/79/2210/2015/2317/24
18/1019/919/1027/1934/1138/1557/10
58/8
open [4] 4/137/441/268/8
operate [1] 31/9
operating [1] 9/11
operative [3] 20/2462/1463/1
opinion [4] 22/1055/261/2264/22

opportunity [3] 22/422/1062/2
oppose [2] 56/362/4
oral [1] 62/11
order [8] 8/922/223/336/555/2356/22
63/1165/9
original [2] 35/2336/7
other [14] 27/2328/2355/457/21
41/943/443/2145/2246/2348/1250/7
52/1660/1965/18
otherwise [1] 13/9
ought [3] 17/1333/1733/18
our [7] 7/167/258/258/2510/111/4
20/2128/536/743/1744/2548/955/2060/8
61/261/2261/2263/1164/565/665/20
ourselves [1] 62/2
out [12] 6/2313/2523/1723/2124/125/11
34/245/355/2055/2259/1663/20
outcome [2] 21/935/11
over [7] 9/119/119/2315/622/1226/25
50/8
over-enunciation [1] 22/12
Overlapping [18] 7/114/1016/616/25
18/1120/1221/1624/1227/1129/831/17
32/1934/2338/638/2143/646/348/21
oversee [1] 26/2
overturn [1] 30/17
own [3] 8/554/1362/19
ownership [1] 53/9

**P**

page [2] 1/66/17
pager [1] 30/22
pages [12] 6/36/126/136/136/146/16
7/1033/1534/1034/1438/1540/24
paper [1] 38/25
paragraph [2] 35/2539/23
paragraphs [2] 5/2151/16
Pardon [1] 14/13
part [24] 8/2322/1327/827/1030/2531/1
31/232/832/1032/1232/1640/940/14
45/2351/852/2454/1654/1755/1256/24
57/1459/861/1161/11
partial [1] 1/9
particular [2] 12/1464/10
particularly [3] 5/636/1437/5
parties [1] 8/24
parties' [1] 6/14
party [1] 40/15
passed [1] 10/9
passionate [1] 32/21
past [1] 22/13
Pate [1] 25/1
path [2] 54/2355/164/2364/24
patient [2] 10/1730/10
patients [5] 8/48/249/1228/1628/25
PDF [1] 1/1
pejorative [1] 60/24
pending [2] 35/1035/16
people [3] 31/1039/2465/17
Perfect [1] 55/15
performance [10] 8/208/239/109/12
9/1510/211/2512/412/1031/6
performer [1] 30/15
performing [2] 9/513/24
period [2] 1/430/6
person [9] 6/66/69/59/2342/147/1348/1
48/264/10
perspective [7] 20/2135/1954/2056/14

**perspective... [3]** 56/1556/1756/17
**picked [1]** 16/15
**piece [3]** 59/259/259/3
**place [1]** 12/230/7
**placed [1]** 22/3
**plainly [3]** 17/1317/1436/19
**plainspoken [1]** 46/6
**plaintiff [10]** 2/43/24/95/240/2342/4
57/963/1065/265/12
**plaintiff's [1]** 6/15
**plaintiffs [1]** 61/25
**plan [4]** 55/1055/1155/1855/23
**plausible [2]** 43/1862/6
**plausibly [4]** 44/944/1146/2266/7
**plead [11]** 6/224/1034/1443/1747/3
58/2158/2261/2562/462/862/9
**pleading [6]** 5/2142/643/1745/845/11
45/12
**please [1]** 63/15
**pled [18]** 20/520/720/1733/844/345/19
49/1849/1950/1853/2454/154/554/757/1
58/158/558/1262/6
**plow [1]** 62/17
**point [18]** 11/1718/820/1025/1626/6
30/1642/1544/744/2244/2345/748/11
49/1953/1760/561/1462/2163/10
**points [1]** 56/19
**policies [1]** 30/6
**policy [1]** 30/22
**portion [1]** 1/5
**portray [1]** 23/3
**position [1]** 45/17
**positive [2]** 5/210/8
**possible [3]** 5/19/1335/22
**post [17]** 14/614/714/2115/1316/12
16/1417/1517/1717/2218/419/1319/14
19/1719/1719/2321/2521/25
**post-termination [9]** 14/614/714/21
15/1316/1217/1718/419/1319/17
**practice [1]** 54/15
**pre [8]** 16/1317/217/417/1517/2219/14
19/1719/23
**precise [3]** 5/556/2356/25
**precludes [1]** 52/10
**preemployment [1]** 10/9
**prefixes [1]** 19/14
**premise [1]** 6/22
**preparation [3]** 1/1313/1322/20
**prepared [1]** 58/18
**prerogatives [1]** 36/17
**President [1]** 50/25
**President Keel [1]** 50/25
**pretermination [12]** 14/714/1715/10
15/2516/1017/1618/318/719/719/12
19/1625/17
**pretty [9]** 5/129/2253/1855/2256/17
56/1859/2460/764/21
**prevent [2]** 23/340/6
**previously [1]** 61/13
**prior [13]** 6/418/2422/750/657/1457/15
59/359/459/859/1961/661/1363/12
**private [7]** 13/813/925/2426/636/20
36/2053/23
**privileges [2]** 29/339/9
**privity [2]** 36/1436/20
**probably [1]** 53/3
**problem [3]** 22/1031/659/5

**problems [5]** 5/79/1510/230/1333/8
**procedure [4]** 5/310/826/328/23
**procedures [5]** 8/1612/228/1330/3
48/19
**proceed [5]** 33/433/635/237/956/22
**proceedings [6]** 2/122/1767/1568/8
68/1168/14
**process [29]** 13/413/2114/314/614/7
14/814/1914/2115/1115/1416/1016/13
18/820/1921/821/2225/126/2127/22
28/1838/1843/2244/147/1652/756/556/6
56/761/8
**produced [1]** 2/17
**productive [1]** 37/5
**professionalism [1]** 8/2031/5
**program [9]** 5/99/19/229/2223/423/17
25/2026/2526/25
**programs [1]** 28/14
**prohibited [1]** 1/8
**promised [1]** 21/4
**promote [1]** 12/11
**promoted [1]** 12/1
**proof [1]** 46/15
**propose [1]** 37/9
**prospectively [1]** 39/20
**protect [6]** 24/2028/1328/1830/2238/25
62/2
**protection [1]** 38/19
**prove [2]** 46/1246/13
**provide [5]** 8/313/1833/1836/2447/16
**provided [4]** 13/418/723/2227/20
**proving [2]** 49/2249/23
**public [5]** 26/126/226/528/1630/22
**puffing [1]** 17/9
**pull [3]** 21/2024/625/11
**purport [1]** 36/25
**purpose [1]** 58/24
**purposes [1]** 20/24
**pursuant [2]** 30/741/13
**pursue [1]** 22/4
**push [1]** 44/15
**pushing [1]** 65/3
**put [14]** 4/245/210/110/1410/2012/11
12/2436/548/452/557/2260/1563/11
66/11
**puts [1]** 36/1949/17
**putting [5]** 13/1413/1532/1346/2164/8

**Q**
**question [11]** 5/2016/2016/2132/15
34/2437/1537/2337/2538/148/565/11
**question's [1]** 16/23
**questions [1]** 32/25
**quickly [3]** 29/329/2265/3
**quite [1]** 48/22
**quote [1]** 21/3

**R**
**raise [1]** 45/11
**raised [1]** 33/9
**rate [1]** 64/22
**rather [3]** 29/338/153/16
**RDR [2]** 2/1968/19
**re [1]** 48/5
**re-ask [1]** 48/5
**read [10]** 6/934/1635/135/2150/451/25
52/158/1861/361/4
**reading [2]** 57/1257/13

**reaffirmed [1]** 5/19
**really [19]** 9/319/2320/820/2121/2425/6
31/838/2039/1853/156/1056/1557/10
59/559/2063/1163/2263/2464/18
**reason [3]** 30/1952/1256/24
**reasonable [1]** 55/14
**reasons [3]** 23/2524/1659/12
**receiving [1]** 23/16
**recognize [2]** 36/659/3
**recognized [2]** 8/2510/4
**recommendation [2]** 6/1723/20
**recommended [2]** 30/1930/20
**record [4]** 38/2540/1262/268/13
**recorded [1]** 2/17
**redone [2]** 64/17
**redraft [1]** 58/23
**reduced [1]** 68/12
**refer [1]** 19/20
**reference [1]** 47/24
**referencing [1]** 1/6
**referred [1]** 50/11
**referring [1]** 15/18
**regard [4]** 19/1724/1757/259/11
**regarding [1]** 23/6
**regardless [1]** 64/20
**regards [1]** 19/13
**REGENTS [11]** 2/64/74/1313/314/2
37/1042/1543/2548/1053/168/9
**regret [1]** 31/12
**regulated [2]** 9/328/17
**Rehab [1]** 23/12
**Rehabilitation [2]** 22/1652/6
**reinstate [2]** 39/2140/13
**reinstated [6]** 5/921/323/440/740/16
40/16
**reinstatement [8]** 5/1613/813/1013/22
20/940/940/956/4
**rejection [1]** 40/12
**related [1]** 6/15
**relatively [1]** 64/2
**relevance [1]** 26/12
**relevant [1]** 20/4
**reliance [2]** 22/1232/17
**relitigate [1]** 33/12
**rely [3]** 22/2438/1545/14
**remediate [2]** 9/1428/22
**remedy [1]** 14/6
**remember [3]** 43/544/448/10
**replead [7]** 5/256/16/16/234/1158/10
60/21
**report [2]** 6/1750/24
**reported [1]** 68/7
**Reporter [6]** 1/31/71/122/1968/468/20
**REPORTERS [1]** 67/17
**represent [1]** 52/19
**representation [1]** 21/4
**request [2]** 6/1562/7
**required [1]** 23/5
**requires [2]** 5/206/20
**res [13]** 20/2522/533/1441/2542/19
51/1952/1155/1359/1059/1360/463/8
63/9
**res judicata [13]** 20/2522/533/1441/25
42/1951/1952/1155/1359/1059/1360/4
63/863/9
**residency [12]** 7/178/219/79/710/17
12/119/820/1123/423/525/1926/25
**resident [3]** 9/511/2527/1

**R**

**residents [10]** 7/258/1211/426/2328/5 28/1428/1528/1847/1664/6
**resolve [1]** 65/3
**resolved [2]** 4/255/13
**respect [1]** 53/21
**respond [2]** 26/1636/3
**response [7]** 23/1238/1847/265/665/7 65/1066/2
**responses [1]** 6/16
**responsible [1]** 36/1754/2
**restrain [1]** 26/22
**restraint [2]** 27/2328/1
**restricted [1]** 1/3
**result [3]** 9/2533/1440/7
**resulted [1]** 40/8
**results [1]** 20/17
**retaliation [11]** 23/1123/1223/2424/1 24/1926/1326/1336/1237/150/2552/6
**retaliatory [1]** 56/8
**reverse [1]** 42/11
**reversed [2]** 35/759/25
**revert [1]** 36/4
**review [8]** 25/1733/2134/535/1238/2 38/361/1161/11
**reviewable [1]** 61/21
**right [52]** 4/64/247/1412/1513/2416/22 21/1021/2025/1725/2526/526/626/15 26/2227/1327/1727/2128/329/1829/24 31/1634/1839/239/1041/1545/545/17 46/1047/1047/1348/1448/1952/1153/7 53/1153/1654/2054/2255/655/1760/22 61/1762/2063/163/364/1664/2365/25 66/966/1366/2067/2
**rights [2]** 24/2028/3
**rise [2]** 42/561/12
**river [1]** 35/7
**ROBERT [2]** 3/44/18
**ROBERT THRELKELD [2]** 3/44/18
**role [3]** 47/1153/2153/22
**roughly [1]** 6/13
**Rs [1]** 5/25
**ruled [1]** 29/17
**rules [2]** 24/2554/11
**run [2]** 6/129/4
**runs [1]** 54/13
**RYAN [3]** 3/34/124/15
**Ryan Kolb [2]** 4/124/15

**S**

**safe [1]** 30/22
**safety [4]** 10/1728/1630/1036/18
**said [36]** 10/510/610/1310/1510/1511/5 11/1014/1615/1015/1316/1021/2421/24 25/434/2536/137/237/1943/1543/19 44/2346/1146/2146/2549/449/549/14 50/153/1356/256/2257/2457/2463/10 66/1068/11
**salary [1]** 13/15
**same [6]** 43/1547/747/2355/2062/14 65/24
**SARAH [2]** 2/368/9
**satisfied [2]** 54/2254/25
**say [42]** 6/129/2513/1318/319/2320/14 20/1622/2122/2424/724/2526/1027/21 34/1335/335/437/2138/1841/641/1542/4 43/843/1145/1545/2245/2347/2147/22 48/1252/1353/1954/1857/957/1557/17

**S** [cont.]
57/2158/462/964/2465/1065/1766/14
**saying [23]** 11/714/118/819/1622/23 29/2230/1531/431/1040/1543/543/13 43/2244/1944/2148/349/149/249/2054/3 60/1762/162/5
**says [6]** 12/2425/151/1459/2065/16 66/21
**schemed [1]** 30/12
**school [5]** 9/2112/712/1712/1926/20
**schools [2]** 8/68/8
**scope [1]** 63/9
**screening [1]** 10/9
**screwing [1]** 9/2326/25
**scrupulous [1]** 28/14
**second [14]** 10/712/512/1216/1217/19 19/1319/1419/1920/928/2035/537/7 47/1761/21
**see [9]** 21/121/2426/1228/1150/2053/18 55/2558/862/24
**seem [1]** 60/25
**seems [3]** 35/2559/759/15
**send [3]** 8/1713/2566/16
**sense [3]** 8/2246/1254/9
**sent [1]** 15/22
**sentence [1]** 6/9
**sentences [2]** 6/924/4
**separate [1]** 54/11
**separately [1]** 54/7
**serious [2]** 33/2434/5
**serving [1]** 39/17
**set [2]** 41/151/11
**setting [1]** 63/20
**seven [1]** 9/7
**several [2]** 39/2462/3
**sexually [1]** 27/1
**sham [6]** 13/1214/222/2424/2132/13 44/2
**she [46]** 5/35/75/75/85/95/125/125/15 10/210/410/510/610/910/1210/1510/15 12/312/413/2419/819/919/1020/1720/17 20/1820/2321/323/1423/1523/1924/23 25/525/1226/328/328/1928/2030/930/13 30/2031/536/1036/1036/1140/1540/16 **she's [10]** 12/2222/2528/1028/2128/24 28/2430/1130/1531/531/8
**should [20]** 6/212/119/2220/2235/10 35/1236/1138/238/440/1340/1640/17 40/1940/2040/2342/343/2551/353/3 61/16
**show [4]** 24/1145/349/253/25
**showing [1]** 49/6
**shows [2]** 37/840/11
**sic [1]** 28/14
**side [1]** 53/25
**sign [1]** 8/9
**signed [1]** 54/8
**simple [3]** 5/164/364/21
**simpler [1]** 27/25
**simplicity [1]** 63/20
**simply [3]** 41/341/341/6
**since [2]** 57/2063/1
**sir [6]** 39/642/2343/353/1958/2066/1
**sit [1]** 40/19
**sitting [1]** 54/2058/16
**situation [3]** 61/2463/2263/25
**so [109]**
**solutions [1]** 35/19
**some [28]** 5/75/1610/1611/1416/18

16/1917/2517/2520/2321/424/1627/21 27/2529/1636/2336/1544/746/847/5 54/1554/2155/2156/1261/1062/2163/11 64/2067/8
**somebody [2]** 50/850/11
**somehow [2]** 27/2029/21
**something [23]** 6/1013/816/1516/16 40/2441/343/1245/250/250/1251/24 52/1353/1553/1956/756/858/1364/164/2 65/1265/1667/567/8
**sometime [1]** 25/13
**sorry [3]** 7/37/562/16
**sort [2]** 36/1959/16
**sound [2]** 37/1137/18
**spanned [1]** 64/11
**speak [6]** 17/1217/1317/1429/1234/20 62/19
**speaking [1]** 27/14
**special [2]** 10/2254/11
**specialist [1]** 31/9
**specialists [4]** 7/178/149/413/24
**specific [2]** 58/2465/18
**specifically [2]** 62/562/8
**Speese [19]** 35/2036/1539/439/1540/11 47/747/947/2548/348/748/1250/650/8 50/1750/1950/2451/351/2055/21
**Speese's [1]** 51/16
**spences [1]** 46/21
**spent [4]** 5/58/457/1157/13
**spite [1]** 40/15
**sponsoring [6]** 8/28/38/852/2452/25 53/22
**spring [1]** 20/16
**squarely [1]** 42/15
**staff [1]** 54/10
**stage [2]** 45/845/11
**stand [2]** 40/2060/4
**standard [1]** 63/13
**start [6]** 14/215/817/929/2030/161/16
**started [5]** 11/128/129/1829/2061/9
**starting [1]** 4/8
**state [2]** 10/2256/13
**state's [1]** 12/21
**statement [1]** 31/13
**statements [2]** 6/1140/1
**STATES [2]** 2/168/5
**statute [11]** 29/1633/1337/841/2542/19 45/1045/1349/751/1952/955/13
**stay [3]** 35/1035/1538/7
**Stenograph [1]** 68/7
**Stenographic [1]** 1/12
**stenography [1]** 2/17
**Stevens [1]** 4/22
**stick [1]** 62/22
**still [4]** 30/1533/740/1463/4
**stood [1]** 52/12
**stop [9]** 15/927/1227/1629/1132/20 32/2134/234/241/9
**stopping [1]** 45/3
**stuff [8]** 5/136/2011/1031/331/634/16 56/1257/3
**subject [1]** 25/20
**subset [1]** 11/15
**substantial [2]** 9/1825/22
**substantive [1]** 35/13
**such [4]** 5/219/928/1552/3
**sufficient [1]** 45/16
**sufficiently [1]** 58/12

**S**

**suggesting [1]** 52/4
**suggestion [1]** 60/15
**summary [1]** 6/14
**supervise [1]** 8/14
**supervised [1]** 30/3
**supervising [1]** 28/23
**supervision [1]** 13/23
**supervisors [1]** 13/23
**supplemental [3]** 55/2458/1565/20
**support [2]** 57/658/22
**supposed [8]** 5/128/18/219/139/1412/4
13/2147/15
**supposedly [1]** 39/24
**sure [19]** 10/1510/2511/811/1822/9
33/1244/1746/2047/1550/1657/1957/23
59/159/1159/2462/1963/763/1866/2
**surgeons [1]** 9/11
**Susan [1]** 50/23
**suspend [5]** 25/1839/841/441/841/16
**suspended [4]** 5/819/629/236/1
**suspension [17]** 16/325/1525/1630/19
30/2035/2439/1940/440/840/944/10
46/2247/2361/1061/2063/564/15
**SW [1]** 2/20
**sweat [1]** 8/5
**system [3]** 2/67/1668/10

**T**

**T-A-T-E [1]** 18/13
**take [9]** 10/1624/2434/1239/440/1345/4
47/150/852/17
**taken [2]** 51/460/8
**takes [2]** 5/247/11
**taking [3]** 10/1430/562/11
**talk [2]** 15/540/18
**talked [1]** 61/18
**talking [12]** 14/2515/827/327/627/12
27/1627/1829/1134/239/2563/863/13
**tangent [1]** 38/1
**Tate [7]** 14/515/2215/2418/1018/1350/6
50/7
**teach [1]** 54/15
**teaching [3]** 54/1054/1064/6
**tears [1]** 8/5
**technology [1]** 1/13
**Ted [1]** 2/20
**tell [14]** 21/1321/1722/1522/1822/21
24/524/1532/733/1033/1738/1038/14
38/2458/1
**telling [5]** 5/125/1534/943/1243/24
**tells [2]** 8/1250/24
**temp [1]** 54/13
**temporary [1]** 50/14
**tend [1]** 61/17
**term [10]** 15/1715/1715/1816/1316/16
17/1517/1919/1219/1719/19
**terminate [4]** 24/1725/425/1830/14
**terminated [3]** 5/85/925/5
**termination [40]** 9/1614/614/714/9
14/1214/1414/2114/2315/1315/1616/4
16/1216/1817/1717/1817/1917/2217/23
18/418/418/618/918/1018/2218/2418/25
19/419/1319/1319/1719/1819/1919/21
19/2320/420/1020/2025/963/264/16
**terminology [2]** 16/965/11
**terms [2]** 12/2052/6
**test [7]** 10/410/610/710/810/1030/5

64/11

**tested [3]** 5/25/210/12
**testimony [1]** 37/2
**testing [6]** 5/310/310/2130/730/1030/21
**tests [2]** 10/1410/16
**than [10]** 27/2536/438/139/2240/2441/9
45/2246/2357/1865/18
**Thank [8]** 4/237/940/2251/1365/2367/4
67/1267/13
**that [427]**
**that's [73]**
**their [10]** 6/116/128/48/48/1445/11
45/1354/254/1155/1
**them [8]** 8/1513/318/632/136/1749/17
50/2450/25
**then [45]** 5/25/25/95/95/155/186/238/7
8/78/169/69/1410/310/1113/713/713/18
14/215/815/2517/1619/1920/721/324/22
30/830/1130/1431/831/832/432/1834/6
35/138/2441/444/251/151/357/959/16
59/2064/1564/1664/17
**theory [2]** 44/2558/23
**there [51]** 5/169/1511/113/2018/518/9
19/1520/1021/1122/322/1022/2223/24
24/1028/428/628/1228/1229/1529/20
29/2030/235/2536/1136/1239/2339/24
40/641/742/1042/1243/443/1343/2044/4
48/1052/1653/2354/954/1256/757/7
58/1160/361/1062/1662/2263/1163/23
64/1765/17
**there's [16]** 15/2318/2423/2028/17
32/1534/1834/2235/536/239/1841/852/2
53/959/959/1460/2
**thereafter [1]** 51/3
**therefore [2]** 12/1149/24
**these [4]** 6/48/737/855/12
**they [111]**
**they're [13]** 5/256/18/198/219/1313/2
13/1749/1649/1954/1654/1655/1157/7
**they've [5]** 13/223/2349/1649/2354/1
**thing [11]** 9/2016/1816/1917/2519/9
27/2331/1039/1643/1558/2560/6
**things [14]** 8/1913/1716/1916/1917/25
18/122/1222/2533/1534/1135/845/14
57/2461/18
**think [120]**
**thinking [2]** 48/1662/5
**third [5]** 57/160/21
**this [139]**
**those [14]** 5/105/119/1110/1625/2128/9
28/2333/2136/2152/852/1852/2160/3
65/18
**though [5]** 31/841/1041/1850/350/4
**thought [5]** 29/231/2031/2436/2337/2
**thousands [2]** 6/1333/15
**three [5]** 9/1422/1923/1660/2462/13
**THRELKELD [3]** 3/44/1823/9
**through [15]** 7/1714/222/124/2124/22
24/2443/2243/2544/1655/2459/1860/7
60/961/1862/3
**throughout [1]** 61/21
**tight [1]** 63/9
**time [22]** 5/57/1116/1516/1717/817/11
18/122/1425/1629/2534/239/1941/17
47/2047/2357/1157/1357/1859/1864/1
65/565/24
**timeframe [1]** 64/25
**times [1]** 61/3

**timing [1]** 30/9
**today [7]** 19/322/2041/744/1657/2558/2
58/16
**together [4]** 30/1230/1264/967/6
**toggle [1]** 39/22
**told [2]** 13/345/17
**too [1]** 53/4
**totally [1]** 12/19
**touched [1]** 11/19
**touching [1]** 12/13
**track [1]** 4/25
**trade [3]** 26/2327/2328/1
**trained [1]** 7/2528/5
**training [8]** 7/178/148/229/19/225/20
26/328/14
**trains [1]** 11/4
**transcript [8]** 1/11/51/81/91/142/122/17
68/13
**transcripts [1]** 1/2
**tried [2]** 13/1161/4
**trouble [2]** 13/246/10
**true [4]** 24/1855/255/268/13
**truth [1]** 6/25
**try [8]** 15/822/236/1838/2550/1659/4
63/1563/18
**trying [15]** 5/415/215/622/924/1929/23
32/2446/546/646/2048/2051/1157/758/7
63/22
**tunnel [1]** 51/23
**turn [1]** 62/8
**turned [1]** 11/11
**Turner [1]** 2/20
**two [17]** 5/246/58/198/199/1715/315/19
15/2020/2526/1435/2136/2237/137/8
55/1264/965/17
**two-year [1]** 37/8
**type [1]** 27/22
**typewritten [1]** 68/12

**U**

**U.S [2]** 1/142/20
**ultimate [1]** 63/2
**un [1]** 61/13
**un-asserted [1]** 61/13
**unconditional [1]** 13/9
**under [11]** 8/18/2013/2223/1224/25
25/2030/636/942/552/1053/24
**understand [19]** 5/2216/2016/2122/6
22/823/2325/725/826/1733/241/2152/3
53/853/1053/1263/1964/2364/2566/4
**understanding [6]** 11/211/347/1156/18
58/2161/1
**undisputed [1]** 10/2
**undo [10]** 41/541/1741/1842/2142/22
45/2345/2346/2365/1865/19
**unilateral [1]** 10/20
**unique [1]** 7/14
**UNITED [2]** 1/168/5
**UNIVERSITY [3]** 2/64/768/10
**unless [3]** 29/1529/1540/11
**until [7]** 11/515/2321/225/240/1159/14
65/4
**up [18]** 6/811/513/1821/2024/629/529/5
35/137/437/1338/346/846/1652/1252/15
57/1257/1367/5
**upon [5]** 22/1235/2538/1545/1460/15
**us [11]** 10/1413/2131/1335/1836/336/5
38/1858/358/560/1560/17

**use [4]** 17/1519/1231/360/4
**used [5]** 1/1319/1619/1924/1730/14
**using [7]** 14/2415/215/1715/1716/13
16/1323/6

# V

**various [2]** 8/1642/5
**vast [1]** 59/7
**very [11]** 5/432/635/2236/957/25
58/1160/1763/1866/867/4
**via [2]** 13/1813/19
**viable [1]** 22/12
**violated [3]** 9/1625/2156/6
**violation [4]** 52/752/856/858/12
**violations [1]** 51/1
**Voices [18]** 7/114/1016/616/2518/11
20/1221/1624/1227/1129/831/1732/19
34/2338/638/2143/646/348/21
**void [1]** 10/4

# W

**wait [5]** 42/2443/745/2055/865/10
**want [39]** 6/46/86/89/211/1817/1221/21
25/733/133/1134/534/734/1534/1934/25
34/2535/335/1537/437/2137/2337/25
47/552/1253/1455/255/2256/1356/21
56/2358/958/1058/2360/2160/2362/1
63/765/567/5
**wanted [1]** 46/16
**wants [2]** 64/2466/14
**warm [1]** 21/11
**was [102]**
**wasn't [2]** 39/2043/13
**watching [1]** 9/11
**way [30]** 17/2419/1020/2421/1224/9
24/924/924/2224/2427/2527/2533/10
34/1535/840/552/1055/755/1456/156/21
57/157/1057/1757/2258/858/2560/19
62/463/764/5
**ways [1]** 58/1
**we [101]**
**we'd [1]** 36/21
**we'll [6]** 30/153/1861/161/2262/2465/20
**we're [25]** 4/64/207/1511/1812/1513/14
13/1413/1413/1514/128/146/2048/11
48/1548/1548/1848/1953/653/1053/23
61/163/466/566/667/6
**we've [7]** 5/1357/2458/259/2060/760/7
61/18
**WEBB [6]** 3/44/1213/1923/962/162/8
**week [1]** 8/16
**weeks' [1]** 23/16
**well [39]** 6/229/69/1513/1323/1125/6
26/128/829/429/629/2231/1232/1436/3
37/1338/539/1742/744/2246/2447/8
48/2049/1849/1950/150/1852/2254/18
55/2258/858/1558/1759/1261/361/22
62/1163/665/265/22
**well-pled [3]** 49/1849/1950/18
**WellStar [3]** 4/194/2153/4
**went [2]** 10/560/9
**were [23]** 5/119/1512/712/712/916/18
23/2424/1925/2128/2228/2429/2130/20
33/1236/1839/2543/752/2053/1959/8
63/967/1568/12
**weren't [1]** 22/3
**what [150]**

**what's [13]** 6/59/2015/1615/1733/10
35/1238/238/439/2247/1658/166/666/6
**whatever [3]** 26/638/2449/17
**when [42]** 9/2211/1713/1113/1114/9
14/1215/615/817/1517/1518/319/219/23
20/1520/1720/2221/322/624/1825/10
27/127/1429/1130/1734/1834/2235/21
36/636/936/1137/739/2344/246/1156/4
57/2158/358/1860/962/1463/764/11
**whenever [1]** 33/1
**where [28]** 4/258/49/111/1711/2412/6
12/1021/2324/1428/830/635/538/339/24
43/2146/2551/1655/856/1959/661/161/5
61/1561/2563/1063/2363/2564/1
**whereas [1]** 50/10
**Whereupon [1]** 67/15
**whether [14]** 8/138/1825/1826/536/23
56/656/761/1261/2064/864/964/2065/12
65/13
**which [22]** 4/144/195/36/128/1512/23
14/514/2517/2519/920/2425/2330/23
33/1137/740/1241/251/1251/2354/961/9
65/19
**who [10]** 8/48/1430/336/1640/747/10
47/2550/750/1154/15
**who's [3]** 11/2511/2522/18
**whole [4]** 9/2026/2461/2162/16
**why [12]** 5/2019/2221/2124/1129/234/3
42/448/2455/457/760/1165/10
**will [12]** 1/39/69/2117/828/2036/936/15
38/2060/1560/1665/12
**win [1]** 52/21
**winked [2]** 41/1843/8
**withdraw [3]** 46/1449/2551/25
**withdrawal [2]** 46/1249/24
**withdrawing [1]** 49/5
**withdrew [1]** 49/3
**within [4]** 6/329/1538/1565/21
**without [4]** 19/1319/1719/2063/4
**won't [1]** 26/24
**woops [1]** 43/19
**word [6]** 14/2415/219/1419/1646/8
46/10
**words [3]** 17/1622/1862/5
**work [3]** 19/828/1544/8
**worked [1]** 30/12
**working [1]** 8/15
**world [3]** 61/566/566/6
**worse [1]** 35/8
**would [56]** 5/175/1810/1310/1310/15
11/712/912/2313/1015/2417/1719/22
20/1420/1625/725/1327/1927/2128/15
29/2134/134/734/934/1535/435/435/9
35/1436/1336/1336/2337/938/1738/17
38/1838/2438/2539/140/1247/752/14
52/2052/2155/2358/1458/2259/1159/13
60/1460/2560/2561/1061/1762/763/20
65/3
**wouldn't [4]** 5/1816/419/655/4
**write [1]** 10/6
**written [1]** 5/11
**wrong [4]** 10/616/2316/2329/16
**wronged [3]** 20/2320/2336/10
**wrongful [1]** 20/4
**wrote [1]** 10/6

# Y

**y'all [2]** 59/2159/22

**y'all's [1]** 55/17
**yeah [9]** 21/2537/2448/1252/2355/5
55/555/555/1660/20
**year [9]** 9/99/912/1219/919/1120/15
37/864/1164/17
**years [4]** 8/49/762/2462/24
**yes [49]** 7/1314/1814/2014/2215/12
15/1517/2018/2320/221/633/334/21
37/2037/2139/639/1440/2141/1241/19
41/2041/2342/242/1842/2342/2543/2
43/343/1544/2244/2445/645/947/647/17
50/1551/751/1052/2353/1954/454/24
55/1156/1156/1159/2363/1466/166/21
67/3
**yet [2]** 11/2018/9
**you [289]**
**you'd [1]** 13/9
**you'll [1]** 38/16
**you're [34]** 9/1412/1312/2014/2414/25
15/215/215/1715/1818/1221/1127/327/6
27/1834/434/941/943/1244/1944/2145/1
45/345/446/848/448/1649/149/1853/15
54/357/1062/1863/866/4
**you've [21]** 8/1811/511/611/1011/10
11/1912/2413/515/1015/1317/1844/7
44/845/1748/449/2352/1557/2059/6
62/1362/22
**you-all [8]** 23/1033/533/1035/1541/2
47/347/365/14
**your [80]**
**Your Honor [30]** 4/1720/2126/1126/16
36/536/1539/639/1440/1941/2342/243/2
45/647/647/1851/751/2152/452/2353/5
54/454/2457/1960/1460/2060/2361/23
61/2463/1467/3